# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 12, 2023

Lyle W. Cayce
Clerk

———————

No. 22-30670

———————

SHARON LEWIS,

*Plaintiff—Appellant*,

*versus*

GARRETT DANOS, *Individually*, *also known as* HANK; ROBERT YARBOROUGH, *Individually*, *also known as* BOBBY; STANLEY JACOBS, *Individually*; VICKI CROCHET, *Individually*; ROBERT BARTON, *Individually*, *also known as* BOB; LESLIE EDWIN MILES, *Individually*, *also known as* LES; SCOTT WOODWARD, *Individually*; VERGE AUSBERRY, *Individually*; MIRIAM SEGAR, *Individually*; WILLIAM SHELBY MCKENZIE, *Individually*; JOSEPH ALLEVA, *Individually*, *also known as* JOE,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-198

———————————————————

Before WIENER, SOUTHWICK, and DUNCAN, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:

In 2012 and 2013, Plaintiff-Appellant Sharon Lewis—then an Assistant Athletic Director at Louisiana State University ("LSU")—internally reported Head Football Coach Les Miles for sexually harassing

No. 22-30670

students. LSU retained outside counsel—Taylor, Porter, Brooks & Phillips LLP ("Taylor Porter")—to investigate the matter, culminating in a formal report dated May 15, 2013 (the "Taylor Porter Report"). That report and its contents were kept internal. Matters were privately settled, and Miles stayed on as head coach until 2016.

Lewis alleges that Defendants-Appellees—members of LSU's Board of Supervisors (the "Board"), leadership, and athletics department, along with lawyers at Taylor Porter ("Taylor Porter Defendants" and, collectively, "Defendants")—engaged in a concerted effort to illegally conceal the Taylor Porter Report and Miles's wrongdoings. Lewis also alleges workplace retaliation for having reported Miles. She brings both employment and civil RICO claims. The district court dismissed Lewis's RICO-related allegations as time-barred and inadequately pleaded as to causation. We now review and AFFIRM that dismissal.

I.

Lewis initiated her suit after widespread sexual misconduct in LSU's athletics program was reported by *USA Today* in a November 2020 article (the "Article"). *USA Today* went on to file a public document request for the Taylor Porter Report. That request was litigated in Louisiana state court. *See Jacoby v. Galligan*, No. C-703746 (La. 19th Jud. Dist. Ct.). *USA Today* prevailed, and a redacted copy of the Taylor Porter Report was released to the public. Concurrently, LSU retained new counsel—Husch Blackwell LLP—to investigate the Article's alleged incidents, including those related to Miles. That investigation generated another formal report dated March 3, 2021 (the "Husch Blackwell Report"). LSU released the Husch Blackwell Report a day after the Taylor Porter Report was made public.

In April 2021, Lewis filed the instant suit. In it, she alleged employment and professional harms, bringing claims pursuant to Titles VII

and IX, and civil RICO.[1] Relevant to this appeal, on December 2, 2021, the district court ruled that many of Lewis's claims were time-barred ("December 2 Order"). Lewis was permitted to seek leave to file a second amended complaint and an amended RICO statement to "amend her civil RICO claims against [Defendants] William Shelby McKenzie, Vicki Crochet, Robert Barton, . . . Joseph Alleva, Miriam Segar, Verge Ausberry, and Scott Woodward, in their individual capacities."

On December 10, 2021, Lewis filed a motion for leave to file a second amended complaint and a first amended RICO case statement. That motion was denied for failure to comply with the December 2 Order's parameters for seeking amendment. On December 17, 2021, Lewis filed a motion to reconsider the December 2 Order, which was denied on January 19, 2022 ("January 19 Order"). With the court's permission, Lewis again moved for leave to file a second amended complaint and a first amended RICO statement. While that motion was pending, Lewis prematurely appealed the January 19 Order. A panel of this court promptly dismissed that appeal for lack of jurisdiction on April 28, 2022. *Lewis v. La. State Univ.*, No. 22-30072, 2022 WL 3161699, at *1 (5th Cir. Apr. 28, 2022).

On February 25, 2022, the district court held a status conference to walk through the pending proposed complaint and RICO statement. At that conference, the court again denied Lewis's motion and detailed the corrections, clarifications, and additions necessary for Lewis's compliance with the December 2 Order. On March 3, 2022, Lewis filed yet another motion for leave to file a second amended complaint and amended RICO

---

[1] A parallel state court action was also initiated by Lewis, which is relevant to our later discussion of *res judicata*. *See Lewis v. La. State Univ.*, No. C-708092 (La. 19th Jud. Dist. Ct.).

statement. The district court granted that motion, which brings us to the operative complaint ("SAC").

The SAC alleges a private cause of action for damages under RICO, specifically under two types of claims: a substantive racketeering claim pursuant to 18 U.S.C. § 1962(c) and a conspiracy to commit racketeering claim under 18 U.S.C. § 1962(d). Lewis alleges the following predicate offenses committed by an enterprise formed of various Defendants: 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1512 (concealing documents or obstructing official proceedings); 18 U.S.C. § 1513 (retaliation against a witness, victim, or informant); and 18 U.S.C. § 1952 (interstate travel in aid of racketeering). Lewis lumps her RICO-related allegations into six "schemes" by various assortments of Defendants:

- Scheme 1: To corruptly obstruct, influence, and impede an official Department of Education Title IX Proceeding.
- Scheme 2: To conceal the Taylor Porter Report from an official Department of Education Title IX proceeding.
- Scheme 3: To tamper with a witness in an official Title IX proceeding.
- Scheme 4: To defraud LSU.
- Scheme 5: To control LSU's Football Program in violation of 18 U.S.C. § 1962(d).
- Scheme 6: To target and harm Lewis's business and employment.

Lewis's relevant alleged harms include injuries to her employment and business, interference with her right to earn a living, and losses of pay raises, promotions, bonuses, benefits, a career at "Power 5 Athletics," and professional development opportunities.

On June 16, 2022, the district court dismissed all of Lewis's RICO claims with prejudice ("June 16 Order"). It first concluded that all claims

related to allegations before April 2017 were time-barred, as detailed in the December 2 Order. The district court also found that Lewis had failed to meet her burden of establishing that her alleged injuries were proximately caused by the Defendants' illegal conduct.

A month after the RICO claims' dismissal, Lewis filed a Rule 59(e) motion to alter or amend judgment, which was denied on September 29, 2022. However, the district court agreed to designate the December 2 and June 16 Orders as final judgments and to certify those issues for appeal. Lewis timely appealed. In the meantime, the parties continue to litigate Lewis's remaining Titles VII and IX claims in the district court.

## II.

We review the district court's dismissal of Lewis's complaint *de novo*. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). We accept as true all well-pleaded facts and construe the allegations in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). That said, we "do not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010)). A complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The remaining issues before us—those regarding amended pleadings and reconsideration—are reviewed for abuse of discretion. *See Ayanbadejo v. Chertoff*, 517 F.3d 273, 276 (5th Cir. 2008).

## III.

Before we address the issues on appeal regarding (1) time-bar and (2) the adequacy of Lewis's pleadings as to civil RICO, we deny the parties' pending motions.

## A.

The Taylor Porter Defendants moved on appeal for partial dismissal based on *res judicata*. We deny that motion because its arguments were not raised earlier. *See Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Ctrs., Inc.*, 200 F.3d 307, 316–17 (5th Cir. 2000) ("It is a bedrock principle of appellate review that claims raised for the first time on appeal will not be considered."); *but see Energy Dev. Corp. v. St. Martin*, 296 F.3d 356, 361 (5th Cir. 2002) ("One decision of this court has allowed a party to assert *res judicata* for the first time on appeal . . . . However, . . . this can only be done 'where all of the relevant facts are contained in the record before us and all are uncontroverted.'"). The Taylor Porter Defendants contend that they could not have raised *res judicata* sooner, but we disagree. Defendants were apprised of their ability to craft a cognizable argument when the state court issued its June 2022 ruling around the time that the district court came to its decision. Defendants could even have briefed *res judicata* earlier in *this appeal* when they filed their extensive responsive briefing. That was almost four months before the filing of their instant motion to dismiss. The law and general principles of fairness militate against determining *res judicata* at this late juncture.

Lewis separately moved this court to take judicial notice of (1) additional privilege logs, attorney billing records, correspondences, and investigative notes involving Defendants during the course of Title IX

No. 22-30670

investigations,[2] and (2) the district court's rulings, dated March 14, 2023 and April 25, 2023, on a request for a protective order to "limit[] [Lewis's] discovery to the claims remaining in this matter" and to protect documents and testimony "protected by the attorney-client privilege."[3]

Federal Rule of Evidence 201 provides that a court may take judicial notice of an adjudicative fact if such fact is not the subject of reasonable dispute, *i.e.*, "that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources" the accuracy of which cannot be questioned. *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998).

We deny Lewis's requests for judicial notice because the facts contained within those documents are the subject of reasonable dispute. If Lewis sought to include those documents as proof that the district court litigation was ongoing, inclusion might be allowed. *See United States v. Hunsberry*, 956 F.3d 270, 285 (5th Cir. 2020). But instead, she seeks to use them as "proof" of specific contentions. For example, Lewis seeks to use the district court rulings to show that "the Appellees took affirmative steps to conceal their RICO conduct from Appellant [and] . . . to corrupt an official proceeding of the Department of Education." Furthermore, Lewis's first set of exhibits are not the kind of "public records" that are often subject to judicial notice—rather, they were released because of litigation. *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (taking judicial notice of "publicly-

---

[2] These were all submitted to the record below during the pendency of this appeal. Lewis contends that these documents were "extensively referenced" in the SAC. She posits that the accuracy of the information contained in these documents cannot reasonably be questioned, in part because they were obtained from LSU, "a government agency."

[3] Both decisions consider the crime-fraud exception to attorney-client privilege and whether Appellant alleged a prima facie case that LSU violated LA. REV. STAT. 14:132(B) (second degree concealment of a public record).

available documents and transcripts" when "there was no actual asserted factual dispute"). As for the rulings of the district court, the parties hotly contest the facts contained in those decisions and continue to litigate those issues there and possibly on appeal. We decline to take judicial notice of those documents but observe that they would do little to assuage our concerns, having already taken Lewis's allegations as true and construing them in the light most favorable to her. *See Heinze*, 971 F.3d at 479.

B.

We now proceed to the issues on appeal. The district court ruled that all of Lewis's civil RICO claims premised on injuries discovered before April 8, 2017, were untimely. The parties agree that a four-year statute of limitations applies here. *See Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 156 (1987). But they disagree on when that clock should start to run.

It is well established that our circuit abides by the rules of injury discovery and separate accrual for RICO claims. "Under the 'injury discovery' rule, a civil RICO claim accrues when the plaintiff discovers, or should have discovered, the injury" and, "[w]hen a pattern of RICO activity causes a continuing series of separate injuries, the 'separate accrual' rule allows a civil RICO claim to accrue for each injury when the plaintiff discovers, or should have discovered, that injury." *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 773 (5th Cir.) (quoting *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988)).

We consider when Lewis was first made aware of her injuries. It matters not when she discovered Defendants' "enterprise racketeering scheme"—she alleges that this happened in March 2021 with the release of the Husch Blackwell Report. Lewis's allegations make clear that she was made aware of her *injuries* much earlier. She was subject to overt retaliation

after "Miles was cleared of any wrongdoing" by the Taylor Porter Report in 2013. Lewis alleges numerous harmful workplace interactions from that point forward. Given that Lewis filed her original complaint on April 8, 2021, her claims for injuries that were discovered—or that should have been discovered—before April 8, 2017 are time-barred.

We next examine whether the principles of "equitable tolling" or "fraudulent concealment" rescue Lewis's pre-2017 claims, both of which would alter the start of Lewis's clock. These concepts are technically distinct, but here they greatly overlap. "[E]quitable tolling may be appropriate when the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Ramirez v. City of San Antonio*, 312 F.3d 178, 183 (5th Cir. 2002) (quotation marks and citation omitted). That doctrine is "a narrow exception . . . that should be 'applied sparingly.'" *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 457 (5th Cir. 2011) (citation omitted). Under the fraudulent concealment doctrine, "the limitations period is tolled until the plaintiff discovers, or with reasonable diligence should have discovered, the concealed fraud." *Love*, 230 F.3d at 779. The concealment must be through affirmative acts—"the defendant 'must be guilty of some trick or contrivance tending to exclude suspicion and prevent inquiry.'" *Texas v. Allan Constr. Co.*, 851 F.2d 1526, 1529 (5th Cir. 1988) (alteration adopted) (citations omitted). Fraudulent concealment cannot be applied to toll a plaintiff's claims unless such concealment prevented discovery of the injury. *Love*, 230 F.3d at 777.

Lewis contends that the extraordinary circumstance which stood in the way of her filing suit sooner was Defendants' concerted deception of Miles's legal liability. Lewis's key allegation regarding this delay is that Defendant Vicki Crochet, then LSU's counsel, told Lewis at a formal meeting that Miles had not violated Title IX because the student workers

were of consenting age. Lewis contends that she relied on that "act of deception" in her decision not to investigate or file suit sooner. However, Crochet was simply conveying her legal opinion regarding Miles. *See Farmer v. D & O Contractors*, 640 F. Appx. 302, 307 (5th Cir. 2016) (rejecting the argument that a plaintiff's mistaken reliance on the FBI's representation entailed a sufficiently extraordinary circumstance). Crochet was not Lewis's counsel, and Lewis does not allege that she thought Crochet represented her. Considering the circumstances and obviousness of Miles's misconduct, Lewis could have sought her own legal counsel or further questioned Crochet's conclusion. At best, Lewis engaged in a single overt step to determine whether suit was necessary when she asked Crochet about the investigation of Miles. This lack of diligence does little to determine the lengths to which Defendants would have gone to prevent Lewis's timely filing of suit. Her inaction cannot be explained away by any alleged deception.

Lewis also contends that Defendants "fraudulently concealed" the Taylor Porter Report by keeping it off-site at the law firm. She claims that she was thus prevented from learning the information she needed to file her claim within the statutory period. However, Lewis does not contend that she would have acted differently had the report been *physically maintained* on LSU's premises. Neither does she allege any diligence on her part to uncover a non-public report had it been located elsewhere—for example, in the athletics department. "[I]n light of the consensus of authority, we conclude that 'fraudulent concealment' in the context of civil RICO embodies a 'due diligence' requirement." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 195–96 (1997).

Lewis's claims based on injuries that were discovered, or should have been discovered, before April 8, 2017, were appropriately dismissed with prejudice. Any further allegations by Lewis cannot change the fact that she

knew of her injuries as early as 2013, a fact pertinent to her pending employment-related claims.

## C.

The district court also determined that Lewis's allegations fail to demonstrate that her injuries were *proximately caused* by the alleged predicate acts. We agree that Lewis cannot overcome that deficiency.

Pursuant to § 1964, a civil RICO plaintiff must show (1) a violation of § 1962, (2) an injury to his or her business or property, and (3) that such injury was proximately caused by a RICO violation. *Cullom v. Hibernia Nat'l Bank*, 859 F.2d 1211, 1214-1215 (5th Cir. 1988). The independent requirements of injury and causation are referred to as prudential standing. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014). The causation requirement consists of both but-for and proximate causation. Proximate causation examines "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Id.* at 133. This court has made clear that "plaintiff must demonstrate that the alleged [RICO] violation 'led directly' to the injuries." *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784-85 (5th Cir. 2020) (citation omitted).

Lewis can only establish causation by showing that her injuries were directly caused by the alleged predicate acts. A general—and astute—theme of the district court's analysis is that "the RICO proximate cause requirement is designed to deny recovery in situations such as this one 'when too many unexpected things had to happen between the defendant's wrongdoing and the plaintiff's injury, in order for the injury to occur.'" That observation rings undeniably true. Lewis alleges injuries that are more directly traced to her employment claims. Beyond that, most of the relevant allegations affected others, not Lewis:

Predicate Act - 18 U.S.C. § 1512(c) (concealing documents or obstructing official proceedings): Lewis was not the victim of Defendants' "concealment" of the Taylor Porter Report from the public and from LSU's Board of Supervisors (the "Board"). Lewis alleges that Defendants' conduct interfered with her right to earn a living, exposing her to lawsuits, and leading to losses of pay raises, promotions, bonuses, benefits, her career in Power 5 Athletics, and professional development opportunities. That concealment, when accepted as true, instead harmed the Board and LSU (opening those entities to liability), the alleged victims (who would not have found justice), and third parties, such as *USA Today* (who have an interest in uncovering such wrongdoing). Lewis also alleges that Defendants improperly obstructed and influenced a Title IX investigation against Lewis herself by fraudulently instituting such proceedings, giving false or misleading testimony, or otherwise concealing allegations. Although, in this instance, Lewis is the subject of any alleged harms that would flow from an adverse determination of that investigation, the causal chain is too attenuated. The investigation was complex and included allegations that would have existed regardless of the alleged obstruction. This is one situation in which causation is broken by several layers of uncertain variables. *See BCS Servs., Inc. v. Heartwood 88, LLC*, 637 F.3d 750, 754 (7th Cir. 2011) ("[H]ere is where the doctrine of proximate cause does its work—too many unexpected things had to happen between the defendant's wrongdoing and the plaintiff's injury, in order for the injury to occur.").

Predicate Act - 18 U.S.C. § 1513 (retaliation against a witness, victim, or an informant): Lewis alleges that Defendants illegally settled with a student complainant, engaging in acts such as convincing a professor to allow a student complainant to retake an examination and dissuading testimony at an official Title IX proceeding. We accept these allegations as true; but, again, other parties—not Lewis—were the ones proximately injured by those

actions. Her own injuries are premised on retaliation for reporting Miles, which would have transpired *regardless* of those predicate acts.

Predicate Acts - 18 U.S.C. §§ 1341, 1343 (mail fraud and wire fraud): As for the alleged mail fraud and wire fraud, Lewis did not rely on misrepresentations from Defendants to her detriment. Nor was she directly involved in any of the alleged mails or wires containing misrepresentations. The one exception is Lewis's receipt of the final Title IX Investigation report, but she fails to allege how simply receiving such a report led directly to her property and professional damages. Even when accepted as true, those predicate acts proximately caused injury to others, not to Lewis. For example, LSU is the clear victim of fraud regarding the Taylor Porter Defendants' fraudulent legal bills. Lewis's alleged professional harms are not traceable to that predicate act.

Predicate Act - 18 U.S.C. § 1952 (interstate travel in aid of racketeering): This last predicate act is plainly unrelated to Lewis's injuries. Lewis alleges that specific Defendants traveled interstate to "bribe" a student complainant to drop her claims against Miles. Lewis was not the direct victim of any harms from that alleged act, and our prior discussion of retaliation rings true here. Regardless of this predicate act's truth, Lewis would have suffered the same harms.

In conclusion, it is more accurate to say that Lewis's injuries are rooted in workplace retaliation because of her reporting of sexual misconduct. Lewis unsurprisingly struggles to contort her pleadings to fit the difficult mold of civil RICO.[4]

---

[4] Having affirmed the district court on the foregoing, we also conclude that the district court acted within its discretion when it denied Lewis's motion to alter or amend

No. 22-30670

IV.

We DENY the motions on appeal and AFFIRM the district court.

_____

the judgment. Her motion did not present new evidence or law, and she presents no additional argument as to this issue on appeal.