# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————

No. 19-10759

————

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

YUNIEL EDUARDO LIMA-RIVERO,

Defendant – Appellant.

————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CR-41-11

————

United States Court of Appeals
Fifth Circuit

**FILED**
August 21, 2020

Lyle W. Cayce
Clerk

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

Yuniel Eduardo Lima-Rivero appeals the district court's judgment sentencing him to 180 months' imprisonment for conspiracy to possess methamphetamine with intent to distribute. We AFFIRM IN PART, REVERSE IN PART, and REMAND for resentencing.

## I.   Background

On December 11, 2018, Lima-Rivero was involved in a drug transaction with Fidel Alain Martin-Sosa, Juan Ernesto Hernandez, Henry Alberto Echarte-Rivero, and an unnamed customer that led to his arrest and guilty plea. Martin-Sosa drove alone, while Echarte-Rivero drove himself and Lima-

No. 19-10759

Rivero and followed Martin-Sosa's car to Hernandez's residence, where the transaction was set to occur.

Unbeknownst to Martin-Sosa, Lima-Rivero, and Echarte-Rivero, federal investigators were inside Hernandez's residence with an arrest warrant when the two cars pulled up to the residence. Police officers were also nearby. When marked police vehicles approached Echarte-Rivero's car, he drove off at high speed, up to 120 miles per hour, through a residential neighborhood. The officers followed and observed Lima-Rivero throw a backpack ultimately found to contain over three kilograms of methamphetamine out of the passenger window. Echarte-Rivero continued to drive the car at high speed and drove over a residential lawn and its Christmas decorations. The car became inoperable, and the two fled on foot, hiding in a shed in the back yard of a nearby residence. The owner of the shed called 911 to report two suspicious males in her back yard, and the officers responded and arrested Lima-Rivero and Echarte-Rivero without further incident.

Lima-Rivero was charged with conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846. He pleaded guilty at his arraignment.

Lima-Rivero's presentence report ("PSR") recommended adding a sentencing enhancement for reckless endangerment during flight under Sentencing Guidelines § 3C1.2, referencing the factual paragraph summarized above. The PSR also determined that Lima-Rivero had failed to meet the safety valve criteria set forth in 18 U.S.C. § 3553(f)(1)–(5) and Sentencing Guidelines § 5C1.2 because he failed to provide truthful information and evidence to the government concerning the offense.

Lima-Rivero objected to these two sentencing determinations. The court rejected his objections at a sentencing hearing and sentenced him to 180 months' imprisonment. Lima-Rivero timely appealed.

No. 19-10759

## II.    Discussion

Lima-Rivero contests the reckless endangerment sentencing enhancement and refusal to grant a safety valve reduction.  We review the district court's legal interpretations de novo and its findings of fact for clear error.  *See United States v. Zuniga*, 720 F.3d 587, 590 (5th Cir. 2013) (per curiam).  No clear error exists if the factual findings are "plausible in light of the record as a whole." *Id.*  In other words, "[w]e will find clear error only if a review of the record results in a definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks and citation omitted).

We address Lima-Rivero's two arguments below. We hold that the district court did not clearly err as to the reckless engagement sentencing enhancement but did clearly err in refusing to grant a safety valve reduction.

### A.    Reckless Endangerment Enhancement

Sentencing Guidelines § 3C1.2 provides: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." Application note 5 clarifies that "the defendant is accountable for the defendant's own conduct and for the conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused."

Lima-Rivero argues that the district court erred in applying § 3C1.2 "based solely on the fact that [Echarte-Rivero] recklessly drove a car during a high-speed pursuit."  He contends that "general rules of co-conspirator liability do not apply to this enhancement" and cites several circuits' case law, including ours, on this point.

However, the record before us regarding the reckless endangerment enhancement is not limited solely to who drove the escape vehicle.  In response to the objection to this enhancement, the Addendum to the PSR, which the district court adopted, specifically referenced the fact that Lima-Rivero

3

"thr[e]w a backpack, containing approximately 3 kilograms of methamphetamine, out of the passenger window." We previously held that a defendant who threw "a bag containing methamphetamine onto a public sidewalk while fleeing from the police" qualified for this sentencing enhancement. *United States v. Villanueva*, No. 02-41107, 2003 WL 21355961, at *1 (5th Cir. May 21, 2003) (per curiam). We similarly conclude that Lima-Rivero's throwing a large quantity of a dangerous drug into a residential neighborhood supports the reckless endangerment enhancement.[1] *See United States v. Stricklin*, 290 F.3d 748, 749 n.1 (5th Cir. 2002) (per curiam) (noting the dangerousness of methamphetamine).

### B.    Safety Valve Provision

The safety valve provision permits a district court to disregard the statutory mandatory minimum sentence under certain drug statutes, including § 846, if the defendant satisfies five requirements. 18 U.S.C. § 3553(f)(1)–(5); *see also* U.S.S.G. § 5C1.2. The only requirement at issue here is the fifth: whether Lima-Rivero provided "all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5).

---

[1] Even if we were to limit our review to the facts explicitly discussed by the district court, we would affirm. The court did not determine that Lima-Rivero qualified for the reckless endangerment enhancement based solely on the fact that he was in the escape vehicle. Instead, it noted: "After the coconspirator crashed the vehicle, both the defendant and the coconspirator fled on foot and then hid from the police." Based on these additional facts, the court rejected Lima-Rivero's argument because he "c[ould] be held accountable for the jointly-undertaken activity of him and his coconspirator." We recently held that a district court did not err in imposing a reckless endangerment enhancement on a defendant who did not drive the runaway vehicle because the record showed that the defendant chose to stay in the vehicle after the driver instructed him to leave. *United States v. Terrazas*, No. 19-50326, 2020 WL 3095944, at *2 (5th Cir. June 10, 2020) (per curiam). Based on that record, we concluded that it was plausible that the defendant aided or abetted the driver's conduct. *Id.* Similarly, here, the district court did not clearly err in finding that Lima-Rivero was "an aider and abettor" of the vehicle chase judging from the events following the vehicle crash.

Lima-Rivero argues that the district court misunderstood the legal standard under this section. We agree. The government asserted that Lima-Rivero failed to satisfy the requirement to truthfully provide all known information about the offense and conduct related to the offense. § 5C1.2(a)(5). In addressing the issue at sentencing, the district court stated, "I think it's up to the government to determine if the defendant has complied with [the criterion]." Further, after noting that the Government was not satisfied with Lima-Rivero's truthfulness, the district court said: "I don't know how you get around that."

The district court appeared to be under the impression that it lacked discretion to apply the reduction if the government was not satisfied that Lima-Rivero met the requirements. This is an incorrect understanding of the law. The question of whether Lima-Rivero had satisfied § 3553(f)(5) is one for the district court. It is not bound by the government's determination of whether a defendant failed to provide truthful information. *See United States v. Miller*, 179 F.3d 961, 965, 969 (5th Cir. 1999).

Before ruling on the safety valve reduction, the court permitted Lima-Rivero to question the DEA agent who worked on his case, who testified that Lima-Rivero was "less than forthcoming regarding many things." The government contends that by allowing Lima-Rivero to question the DEA agent, the district court applied the proper legal standard because such questioning would have been meaningless if the district court believed it was bound by the government's assessment. We disagree; allowing Lima-Rivero to question the DEA agent is not enough to correct the district court's repeated misstatements of law. We therefore hold the district court clearly erred by misapprehending the legal standard.

Even if the district court applied the proper legal standard, we also hold that the district court erred in its determination that Lima-Rivero did not

provide truthful information based on a case agent's mere speculation, consistent with our binding precedent. *See id.* at 969 (holding that because the government's assertion was "merely speculative" it was not proper grounds to deny a safety valve reduction). "Section 3553(f)(5) does not invite . . . speculation" or "mere conjecture." *United States v. Miranda-Santiago*, 96 F.3d 517, 529 (1st Cir. 1996); *see Miller*, 179 F.3d at 968 (adopting *Miranda-Santiago*'s holding that the government cannot rely on mere speculation); *see also United States v. Flores*, 70 F. App'x 172, 178 ("We found persuasive the First Circuit's reasoning in *United States v. Miranda-Santiago*." (citing *Miller*, 179 F.3d at 968)). And we have reversed the denial of a safety valve reduction where the district court's conclusion that that a defendant did not cooperate fully was "pure speculation." *Miller*, 179 F.3d at 968. We have affirmed the denial of the safety valve provision in cases where the government proffered "direct" and "concrete" evidence "such as statements from [the defendant's] codefendants" that tended to prove the defendant was lying. *United States v. Munera-Uribe,* 192 F.3d 126, 1999 WL 683823, at *13–14 (5th Cir. 1999) (unpublished).

In *United States v. Miller*, we reversed the district court because it relied on "the government's assertion that [the defendant] lied about his knowledge of cocaine drying" when the assertion was "based simply on the fact that the process is complex and that [the defendant] had been previously involved in cocaine trafficking." 179 F.3d 961, 969 (5th Cir. 1999). We held that this was too speculative because it was not based in any direct evidence. *Id.*

We do not, as the dissent asserts, "contend that 'direct' and 'concrete' evidence is required." *See* Dis. Op. at 3. We do, however, require that evidence more than "speculation" or "mere conjecture" is presented. *See Miller*, 179 F.3d at 968. The dissent points to three instances in unpublished opinions where we have "held that a federal agent's testimony regarding a defendant's

untruthfulness *based on evidence*, instead of simply the agent's intuition, [was] sufficient to affirm a district court's denial of a sentence reduction under the safety valve provisions." *See United States v. Adams*, 791 F. App'x 494, 495 (5th Cir. 2020); *United States v. Holmes,* 694 F. App'x 933, 936 (5th Cir. 2017); *United States v. Mendoza-Garcia,* 350 F. App'x 976, 977 (5th Cir. 2009).[2] However, that is not the case before us.

In addition to being factually distinguishable, the cases cited by the dissent are not binding. Here, we must follow our precedent and reverse the denial of a safety valve reduction when the Government's assertion that a defendant was untruthful was "merely speculative." *Miller*, 179 F.3d at 696. We do not proffer that a DEA agent's testimony is always speculative and could never be the basis of denying a safety valve provision, but such testimony must be supported with "specific factual findings" or "easily recognizable support in the record." *See Miller*, 179 F.3d at 968 (quoting *Miranda-Santiago*, 96 F.3d at 529). The DEA agent's testimony in this case is not supported by such evidence.

---

[2] In *Adams*, this court expressly stated that the district court relied on "evidence *and* the agent's testimony" to reach the conclusion that Adams had not been truthful. 791 F. App'x at 495 ("That evidence and the agent's testimony regarding Adams's ability to buy large quantities of "ice" methamphetamine, his offer to front a significant amount of drugs to the CI, and his knowledge of drug jargon provided a sufficient basis for the district court to make 'an independent determination of [Adam's] truthfulness[ ] based on the evidence before it.'").

In *Holmes*, the district court concluded that the defendant was not "truthfully disclosing all that [he knew]" as required by § 3553. 694 F. App'x at 935. It based this conclusion on a DEA agent's testimony that the defendant refused to answer questions regarding specific aspects of the drug transaction. *Id.* It was not merely the fact that the DEA agent said the defendant was not forthcoming that made it "non-speculative." It was the fact that the agent relied, not on his intuition, but on the defendant's refusal to answer certain questions. This is evidence supporting the conclusion that the defendant was not "disclosing all that [he knew]". *Id.*

In *Mendoza -Garcia*, the DEA agent testimony pointed to specific instances in the record—phone calls and interactions the government observed during surveillance. 350 F. App'x at 977. Then, the agent pointed to specific individuals involved that Mendoza-Garcia interacted with, as demonstrated by the evidence, but refused to identify to the government. *Id.* Indeed, this case well illustrates the difference between speculation and evidence that can appropriately be relied upon to deny a safety valve reduction.

Here, the agent testified that based on his "training and experience and review from cell phones, [and] talking to other codefendants" Lima-Rivero was being untruthful. When asked by Lima-Rivero's counsel if that conclusion was based on "personal belief based on training and experience" or "discovery of any specific concrete information," the DEA agent acknowledged it was based on personal belief, i.e. not based on any specific concrete information.

The agent provided no specifics regarding what was on the cell phone or said by the codefendants that demonstrated Lima-Rivero's untruthfulness, even when directly asked by Lima-Rivero's counsel whether evidence existed. And no facts supporting his untruthfulness are obvious on the record. Accordingly, the district court erred in relying on this unsupported testimony. This case should be remanded for re-sentencing.

## III.    Conclusion

For the foregoing reasons, we AFFIRM IN PART, REVERSE IN PART, and REMAND for resentencing.

8

No. 19-10759

HAYNES, Circuit Judge, concurring in part and dissenting in part:

I concur with the majority opinion that the district court did not clearly err as to the reckless-endangerment sentencing enhancement. However, I disagree with Part II.B. of the majority opinion and would hold that the district court did not clearly err in refusing to grant a safety valve reduction. I thus would fully affirm the district court's judgment.

Although the district court's initial remarks showed a misunderstanding of the legal standard for determining whether Lima-Rivero satisfied § 3553(f)(5), thereafter, the court permitted Lima-Rivero to question his case agent and made an independent factual finding on whether Lima-Rivero provided truthful information to the Government. Had the district court continued to believe the conclusion that the Government's position was binding, examination of the case agent would have been irrelevant and an unnecessary use of the court's time.

The agent testified that Lima-Rivero was "less than forthcoming regarding many things." For example, Lima-Rivero had told the agent that he was only involved in the drug trafficking for which he pleaded guilty. But "[b]ased on [his] training and experience and review of evidence from cell phones, [and] talking to other codefendants," the agent testified that he believed Lima-Rivero had been involved in other drug trafficking transactions. Based on the agent's testimony, the district court overruled Lima-Rivero's objection, concluding that "[t]here's been no proof that he really qualifies for the reduction." Thus, the district court ultimately made a factual finding, and I disagree with the majority opinion's holding that the district court committed clear legal error.

I also disagree with the majority opinion's holding on the district court's factual findings. There was no "pure speculation" or "mere conjecture" of Lima-

9

Rivero's untruthfulness. *See United States v. Miller*, 179 F.3d 961, 968 (5th Cir. 1999) (quotation omitted). The district court's conclusion that "[t]here's been no proof that [Lima-Rivero] really qualifies for the reduction" was based on the case agent's testimony, which in turn was based on the agent's "training and experience and review of evidence from cell phones, [and] talking to other codefendants." We have repeatedly held that a federal agent's testimony regarding a defendant's untruthfulness based on evidence, instead of simply the agent's intuition, is sufficient to affirm a district court's denial of a sentence reduction under the safety valve provisions. *See United States v. Adams*, 791 F. App'x 494, 495 (5th Cir. 2020) (per curiam) (affirming the district court's reliance on a federal agent's testimony based on the agent's conversation with the defendant); *United States v. Holmes*, 694 F. App'x 933, 936 (5th Cir. 2017) (holding that the district court did not clearly err in denying a defendant a safety valve reduction because it had relied on "specific evidence," namely "the DEA agent's testimony that [the defendant] was not 'forthcoming'"); *United States v. Mendoza-Garcia*, 350 F. App'x 976, 977 (5th Cir. 2009) (per curiam) (holding that the district court did not clearly err in relying on a federal agent's testimony that was based on "taped conversations, surveillance," and his conclusion that "a mid-level [drug] supplier . . . would be in a position to reveal more information about his sources").[1] I would thus hold that the case agent's testimony based on evidence from cellphones and other codefendants was sufficient evidence that amounted to more than pure speculation and that the district court did not clearly err in denying Lima-Rivero a sentence reduction under the safety valve provision.

---

[1] The majority opinion contends that these cases are factually distinguishable from this case because the federal agents' testimonies included specific, concrete facts of untruthfulness. *See* Maj. Op. at 6–7 & n.2. But, as explained below, such concrete evidence is not required.

## No. 19-10759

The majority opinion goes further and contends that "'direct' and 'concrete'" evidence is required. *See* Maj. Op. at 6 (quoting *United States v. Munera-Uribe*, 192 F.3d 126, 1999 WL 683823, at *14 (5th Cir. 1999) (unpublished)). But in *Munera-Uribe*, we did not hold that concrete evidence is required; we held only that the government, by offering concrete evidence (such as statements from the codefendants), provided more than mere conjecture.[2] *See* 1999 WL 683823, at *14. Accordingly, I would affirm the district court's judgment denying Lima-Rivero a safety valve reduction. From the majority opinion's determination not to do so, I respectfully dissent.

---

[2] The majority opinion also contends that in *Miller*, we held that the Government's proffered evidence "was too speculative because it was not based in any direct evidence." Maj. Op. at 6 (citing *Miller*, 179 F.3d at 969). But *Miller* does not hold that direct evidence is required; it holds simply that hypotheticals are not sufficient to deny a defendant a safety valve reduction. *See Miller*, 179 F.3d at 969. In that regard, I disagree that *Miller* requires testimony "be supported with 'specific factual findings' or 'easily recognizable support in the record.'" Maj. Op. at 7 (quoting *Miller*, 179 F.3d at 968).