# United States Court of Appeals for the Fifth Circuit

———————

No. 23-30386

———————

United States Court of Appeals
Fifth Circuit

**FILED**

June 17, 2024

Lyle W. Cayce
Clerk

Sharon Lewis,

*Plaintiff—Appellee*,

*versus*

Vicki Crochet, *Individually*; Robert Barton, *Individually*, *also known as* Bob,

*Defendants—Appellants*.

————————————————————

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-198

————————————————————

Before Stewart, Duncan, and Engelhardt, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Vicki Crochet and Robert Barton (collectively, "Appellants") appeal the district court's order compelling evidentiary disclosures and depositions implicating the attorney-client privilege. For the reasons set out below, we REVERSE and REMAND.

No. 23-30386

## I. Factual Background and Procedural History

Sharon Lewis ("Lewis"), an African-American woman, worked as an assistant athletic director for Louisiana State University's ("LSU") football team until 2022. Lewis's role included the authority to hire and manage student workers in the football team's administrative offices. Lewis alleges that she experienced and witnessed numerous instances of racist and sexist misconduct from former head football coach Les Miles ("Miles") and that she received complaints of sexual harassment from student workers that she oversaw. Lewis ferried those complaints to the heads of the athletics program, often with no action taken.

### A. The 2013 Investigation

In 2013, LSU retained Appellants, partners of the law firm Taylor, Porter, Brooks & Phillips LLP ("Taylor Porter"), to conduct a Title IX investigation of sexual harassment allegations made against Miles. That report and its contents were kept confidential, and allegations brought by the student complainants were privately settled.[1] The relevant documents generated in that investigation were two memoranda, the Student Complaint Memo ("Student Complaint Memo") and the Memo to File ("Memo to File"), that summarized the factual allegations in sexual harassment complaints against LSU football staff. After the investigation, Miles was "cleared of any wrongdoing"; nevertheless, LSU urged Miles to refrain from one-on-one contact with student employees, a recommendation that was memorialized in an August 13, 2013 Directive Letter ("Directive Letter").

During the 2010s, sexual assault allegations against LSU football players, coaches, and staff were the subject of news media stories across the

---

[1] *See Lewis v. Danos*, 83 F.4th 948, 951–52 (5th Cir. 2023).

nation. On November 16, 2020, USA Today published an article asserting that there was widespread sexual misconduct in LSU's athletics program.[2] Following the release of the article, LSU retained the law firm Husch Blackwell LLP to conduct an independent review of LSU's Title IX compliance and the incidents reported in the USA Today article. The article also prompted Lewis to bring Title VII and Title IX claims against numerous members of LSU's Board of Supervisors ("Board") and athletics department. She also filed civil Racketeer Influenced and Corrupt Organization Act ("RICO") claims against Appellants. The alleged RICO claims arose from Appellants' conduct in the Title IX investigation and an alleged scheme to suppress sexual harassment and misconduct complaints against Miles and LSU football players and staff.

On June 16, 2022, the district court dismissed the RICO claims against Appellants because Lewis's claims were time-barred and she failed to establish proximate causation. On appeal of the dismissal order, a panel of this court affirmed the district court on the grounds that Lewis knew of her injuries from alleged racketeering as early as 2013, and thus the four-year statute of limitations had expired before she filed suit in 2021.[3] The panel further held that the causal chain from the alleged concealment of the Taylor Porter Report to Lewis's alleged injuries—the loss of her job, future

---

[2] Kenny Jacoby et al., *LSU Mishandled Sexual Misconduct Complaints Against Students, Including Top Athletes*, USA Today (Jan. 28, 2021, 9:20 AM), https://www.usatoday.com/in-depth/sports/ncaaf/2020/11/16/lsu-ignored-campus-sexual-assault-allegations-against-derrius-guice-drake-davis-other-students/6056388002/ [https://perma.cc/65D9-K4Y9].

[3] *See Danos*, 83 F.4th at 956.

opportunities, and reputational damage—was too attenuated to sustain her civil RICO claims.[4]

### B. The Crime-Fraud Exception Order

During the appeal of the dismissal order, Lewis's Title VII and Title IX claims against the Board proceeded to a heated discovery period. In October 2022, the Board moved for a protective order to prevent depositions of Appellants and the disclosure of documents from Taylor Porter's Title IX investigation because they were irrelevant to Lewis's remaining Title VII and Title IX claims. The Board further asserted that the attorney-client privilege and the work product doctrine applied. In opposition, Lewis countered that the unredacted Student Complaint Memo, unredacted Taylor Porter billing records, and other supporting documents were discoverable under the crime-fraud exception. Lewis pointed to several federal and state laws regarding concealing public records, bribery, or influencing or preventing testimony in support of her argument.

After the motion was submitted, the parties urged the district court to decide the crime-fraud exception issue before addressing the rest of the Board's motion for a protective order. The district court released its opinion on the crime-fraud exception issue on March 14, 2023 (the "Crime-Fraud Exception Order"). It determined that Lewis made a prima facie showing that the Board violated Louisiana Revised Statutes 14:132(B) because she provided evidence that "the Board intentionally concealed the Memo to File, Student Complaint Memo, and [any] Attachments beginning on May 15, 2013, at Taylor Porter's law offices." The district court noted that Lewis further demonstrated that Crochet wrote the "Memo to File, documenting the discussion by some members of the Board regarding Taylor Porter's

---

[4] *See id.* at 956–58.

investigation . . . and the method by which the Student Complaint Memo and Attachments were to be preserved."

In its reasons, the district court pointed out that Appellants and several members of the Board met on May 15, 2013, and received hard copies of all the relevant documents before "return[ing] their hard copies to the Taylor Porter lawyers" for storage at their office. It then noted the Student Complaint Memo's language that analyzed whether the memo would be subject to public records requests or requests for production in any legal proceeding and "attempt[ed] to minimize the possibility of" such by requiring "any written directive [letter]" to Miles "to be maintained exclusively in the law offices of Taylor Porter." It then concluded that Lewis also made a prima facie showing that the May 15, 2013 meeting, Memo to File, Student Complaint Memo, and its attachments were made in furtherance of violating La. R.S. 14:132(B) and that the Board failed to rebut the showing. But upon review of the alleged criminal conduct and the withheld information in the redacted Student Complaint Memo and Taylor Porter billing records, the district court held that the unredacted documents did not reasonably relate to the concealment of the alleged public records. Thus, it determined that the unredacted memo and billing records did not fall within the crime-fraud exception. The district court then deferred ruling on whether any related documents associated with the Memo to File and Student Complaint Memo could be reasonably related to the crime of injury to the public record. In sum, the district court's Crime-Fraud Exception Order accepted Lewis's theory that the Board violated La. R.S. 14:132(B) as plausible and deferred its express ruling on whether the privilege could be pierced.

The day after it issued its Crime-Fraud Exception Order, the district court held a status conference to discuss the status of the case and ordered the parties to prepare letters identifying any additional discovery requests.

No. 23-30386

After receiving those letters, the district court ordered Lewis to file a motion to compel addressing the lingering "issues of discoverability and the application of [its Crime-Fraud Exception Order]." The Board sought a writ of mandamus from this court to reverse the Crime-Fraud Exception Order.[5] The panel denied mandamus relief because it was "confident [that] the [district] court will take reasonable measures to monitor the depositions and ensure the witnesses are not required to reveal privileged information that does not bear a 'reasonable relationship' to the Board's alleged concealment of public records."[6]

### C. The April 11, 2023 Motion to Compel

On April 11, 2023, Lewis filed a motion to compel the depositions of Appellants and the disclosure of the redacted portions of the Taylor Porter Report and other information alleged to have been concealed at Taylor Porter's offices. That same day, Appellants sought a protective order to prevent the disclosure of legal advice and communications between LSU and Appellants as governed by attorney- and work-product privileges. The Board and two of its members also filed oppositions to Lewis's motion to compel.

The district court denied Appellants' motion for a protective order and compelled the depositions of Appellants and the disclosure of documents drafted during the 2013 investigation ("Disclosure Order"). It began by stating that Appellants' arguments that the Crime-Fraud Exception Order was erroneous were "a request for reconsideration of th[at order] under Rule 59(e), which the [d]ismissed [Appellants] lack standing to make." It further stated that Appellants "stood idly by while the Board and [Lewis] extensively litigated the crime-fraud exception issue." It determined that Appellants'

---

[5] Case No. 23-30441, R. Doc. 2-1 at 2.

[6] Case No. 23-30441, R. Doc. 47-1 at 3–4.

attempt to "question[] the correctness of [its] ruling on the basis of new arguments or cleaned-up versions of already considered arguments flies in the face of the Fifth Circuit's prohibition on using a Rule 59(e) motion to relitigate old matters and raise issues that 'could, and should, have been made before [a ruling was] issued.'" It went on to consider Appellants' arguments based on relevance and proportionality in its order.

The district court ultimately determined that the contested documents and deposition testimony requested were relevant to Lewis's Title VII and Title IX claims. It then rejected the Board's argument that *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999) barred the depositions of Appellants because *Theriot* addressed requests for depositions of the defendants' counsel in a then-pending case. With respect to the document discovery that Lewis sought, the district court "compelled [the Board] to produce documents responsive[7] to" Lewis's requests related to "alleged efforts by the Board to conceal sexual harassment allegations made against [] Miles." Appellants timely appealed.

## II. Standard of Review

Ordinarily, this court's "appellate jurisdiction generally extends only to 'final decisions of the district courts.'" *La Union del Pueblo Entero v. Abbott*, 68 F.4th 228, 232 (5th Cir. 2023) (quoting 28 U.S.C. § 1291). However, we also have jurisdiction over a "narrow class of decisions" that are "immediately appealable as collateral orders even if no final judgment has been rendered." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 448 (5th Cir. 2019) (quoting *Dig. Equip. Corp. v. Desktop Direct,*

---

[7] The document requests sought emails between LSU, the Board, and Taylor Porter "discussing opposing the release of the Student Complaint Memo and Directive Letter" in the public records request litigation initiated by USA Today in the Nineteenth Judicial District Court of the State of Louisiana.

*Inc.*, 511 U.S. 863, 867 (1994)). The legal issue of a non-party's "[s]tanding is reviewed under a de novo standard." *Castillo v. Cameron County*, 238 F.3d 339, 347 (5th Cir. 2001) (citing *Tex. Off. of Pub. Util. Couns. v. FCC*, 183 F.3d 393, 419 n.34 (5th Cir. 1999)). "Because the application of the attorney-client privilege is a fact question to be determined in light of the purpose of the privilege and guided by judicial precedents, [] the district court's finding [that the crime-fraud exception applies is reviewed] for clear error only." *In re Grand Jury Subpoena*, 419 F.3d 329, 335 (5th Cir. 2005) (quoting *United States v. Edwards*, 303 F.3d 606, 618 (5th Cir. 2002)). A factual determination is not clearly erroneous if it is "plausible in light of the record as a whole." *Id.* at 337 (quoting *Edwards*, 303 F.3d at 645 (internal quotation marks and citation omitted)). Clear error exists where a review of the record results in a definite and firm conviction that a mistake has been committed. *United States v. Lima-Rivero*, 971 F.3d 518, 520 (5th Cir. 2020).

## III. Discussion

As a preliminary matter, the parties dispute whether this court has jurisdiction to hear the instant interlocutory appeal and whether Appellants have standing to appeal the district court's denial of their motion for a protective order. On the merits, Appellants contend that the district court clearly erred in determining that the crime-fraud exception applied to the documents produced by Appellants and their communications with LSU's Board. We begin with jurisdiction and standing before addressing the merits of this appeal.

### A. Jurisdiction

At issue is whether the instant interlocutory appeal is permissible under the collateral order doctrine. 28 U.S.C. § 1291 provides that our appellate jurisdiction extends only to "final decisions of the district courts." However, in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949),

the Supreme Court established the collateral order doctrine, a narrow exception to § 1291, for "a small set of prejudgment orders that are 'collateral to' the merits of an action and 'too important' to be denied immediate review." *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 103 (2009) (quoting *Cohen*, 337 U.S. at 546). Lewis contends that "[d]isclosure orders adverse to the attorney-client privilege do not qualify for immediate appeal under the collateral order doctrine" based on the Court's decision in *Mohawk*, 558 U.S. at 108–09. We disagree.

We have recently explained that interlocutory "[o]rders are immediately appealable under [the collateral order doctrine] only if they '(1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) [are] effectively unreviewable on appeal.'" *La Union*, 68 F.4th at 232 (quoting *Henry v. Lake Charles Am. Press, LLC*, 566 F.3d 164, 171 (5th Cir. 2009)). It is important to note that the first two factors of this test are easily satisfied here, as the Disclosure Order is conclusive and the issue regarding the attorney-client privilege is completely separate from the merits of Lewis's Title VII and Title IX claims. *See Mohawk*, 558 U.S. at 108 (holding same). Thus, we are left with the question of whether the Disclosure Order and the Crime-Fraud Exception Order are "effectively unreviewable on appeal." *Lake Charles Am. Press, LLC*, 566 F.3d at 171. We hold that they are.

In *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), reproductive health organizations sued Texas officials after the passage of a bill regulating the disposal of fetal remains. *Id.* at 364. The plaintiffs sought internal communications from a non-party who had testified at the emergency injunction stage and the district court ordered the non-party to turn over the requested documents. *Id.* at 366–67. The non-party appealed. *Id.* at 367. Citing *Mohawk*, the plaintiffs countered that the court lacked appellate jurisdiction over an interlocutory discovery order. *Id.*

We disagreed and held that the consequences of forced discovery were "effectively unreviewable" on appeal from the final judgment because the appellant was a non-party to the case. *Id. Mohawk* was inapposite because it relied on the fact that *a party* could "remedy erroneously ordered discovery" through appeal by moving a court to "remand[] the case for a new trial." *Id.* We reasoned that "*Mohawk* does not speak to the predicament of third parties, whose claims to reasonable protection from the courts have often been met with respect." *Id.* at 368. Ultimately, we concluded that the case was distinguishable from *Mohawk* because "a new trial order can hardly avail a third-party witness who cannot benefit directly from such relief." *Id.* at 367–68.

*Whole Woman's Health* is instructive here. Appellants' claims are effectively unreviewable after final judgment because, unlike parties to an action, they can sustain no relief from a new trial order. *See id.*; *see also Vantage Health Plan, Inc.*, 913 F.3d at 449–50 (holding the same with respect to compelled disclosure of a non-party's sensitive commercial documents). *Mohawk* was a case addressing a *party's* interlocutory appeal of a disclosure order adverse to the attorney-client privilege and thus does not apply to bar appellate jurisdiction here. Accordingly, we conclude that we have appellate jurisdiction over this appeal because the Disclosure Order and the Crime-Fraud Exception Order are effectively unreviewable on appeal, and Appellants' appeal otherwise suits the criteria for collateral order review. *See Vantage Health*, 913 F.3d at 449–50.

*B. Standing*

Lewis argues that Appellants lack standing to bring this appeal because (1) they were not parties to the case at the time of the Crime-Fraud Exception Order and (2) the attorney-client privilege belongs to the client, not the attorney. We are unpersuaded by these arguments.

No. 23-30386

The Supreme Court has held that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Marino v. Ortiz*, 484 U.S. 301, 304 (1988). Nonetheless, some exceptions exist to allow third-party standing to appeal orders injurious to their interests. *United States v. Chagra*, 701 F.2d 354, 358–59 (5th Cir. 1983). Where review is sought of orders issued after a party is dismissed from the underlying suit, that party "is often allowed to appeal" if the order affects its interests. *Id.* at 359 (citation omitted); *see also In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788 (5th Cir. 1979). A non-party may appeal where it "actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-part[y] ha[s] a personal stake in the outcome." *Castillo*, 238 F.3d at 349 (citations omitted).

In *Castillo v. Cameron County*, the State of Texas was a party-defendant listed in the original complaint that sought appellate review of orders issued after it was dismissed from the case. 238 F.3d at 343. The plaintiffs brought § 1983 claims against Texas and local county jailers for overcrowding of county jails. *Id.* at 343–44. The district court entered a temporary injunction ordering the county to reduce the jail population and renewed the injunction several times. *Id.* at 344–46. Because Texas satisfied its obligations in preventing the overcrowding attributable to their inaction, it was dismissed from the action. *Id.* at 346. A few days after Texas was dismissed, the district court denied the motion to terminate the injunction against the county, and Texas appealed the denial. *Id.* at 347. On appeal, we held that Texas had standing because it "ha[d] been an active participant in the proceedings," maintained its position prior to its dismissal, and it risked "being found in civil contempt" if it violated the order, thus providing it a personal stake in the outcome of the appeal. *Id.* at 350–51.

*Castillo* is instructive here. Appellants actively participated in the proceedings prior to their dismissal, the equities weigh in their favor, and

11

they have a personal stake in the outcome as they must comply with the order or risk contempt or sanctions.[8] *See id.* at 350. Furthermore, Federal Rule of Civil Procedure 26(c)(1) gives any person or entity from which discovery is sought, regardless of whether they are a named party to an action, the right to move for a protective order. Appellants expressly invoked Rule 26(c)(1) in their motion. The district court considered this motion in the Disclosure Order, rejected Appellants' arguments, and compelled Appellants' compliance with Lewis's discovery requests. Thus, Appellants have standing to bring the instant appeal.

### C. Crime-Fraud Exception

The attorney-client privilege "exists to encourage full disclosure of pertinent information by clients to their attorneys." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982). This privilege extends "to past criminal violations" because "the client, given the nature of [an] adversary system, has a legitimate interest in securing informed representation without fear of forced disclosure." *Id.* However, a client "has no legitimate interest in seeking legal advice in planning future [or ongoing] criminal activities." *Id.* (citation omitted). The crime-fraud exception vitiates attorney-client privilege if "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." *Id.*

The district court used a three-step analysis to determine whether the crime-fraud exception applied to Lewis's discovery and deposition requests. In its Crime-Fraud Exception Order, it evaluated whether (1) Lewis made a

---

[8] "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995) (citing *SEC v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981)).

prima facie showing that Appellants committed a crime, (2) the privileged communications were held in furtherance of that crime, and (3) the communications were reasonably related to the fraudulent or criminal activity. We address each step in turn.

### i. Prima Facie Case

"In order to invoke [the crime-fraud] exception, the party seeking to breach the walls of privilege must make out a prima facie case." *Id.* To make such a showing, the party must produce evidence that will satisfy the determination that the exception applies until contradicted or overcome by other evidence. *See In re Grand Jury Proceedings in the Matter of Fine*, 641 F.3d 199, 203 (5th Cir. 1981). On appeal, Lewis contends that she set out a prima facie case that the Board utilized Appellants to violate La. R.S. 14:132(B). We disagree.

To evaluate this issue, we must examine the statutory text of the alleged crime. Louisiana Revised Statutes 14:132(B) provides that:

> Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or *concealment* of any record, document, or other thing, defined as a *public record* pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

La. R.S. 14:132(B) (emphasis added). The Louisiana Public Records Act sets out the definition of a public record:

> All books, records, *writings . . . memoranda*, and *papers*, and all copies, duplicates [of such], . . . having been used, being in use, or *prepared*, possessed, or retained for use in the conduct, transaction, or performance of any business, transaction, work, duty, or function which was conducted, transacted, or performed by . . . order of any *public body* . . . are "public

records", except as otherwise provided in this Chapter or the
Constitution of Louisiana.

La. R.S. 44:1(A)(2)(a) (emphasis added). It is uncontested that the Board is
a public body. *See* La. R.S. 44:1(A)(1). The Student Complaint Memo, Memo
to File, and its supporting documents were created by the Board's retained
counsel, and thus likely qualify as public records unless some exception in the
Louisiana Public Records Act applies. *See* La. R.S. 14:132(B). Louisiana
courts have observed that La. R.S. 44:4.1(C) makes clear that "attorney-
client communications are an exception to the Public Records [L]aw and are
not a public record." *Council of City of New Orleans v. Washington*, 2009-
0389, p.3 n.4 (La. App. 4 Cir. 5/12/09), 13 So.3d 662, 664 n.4, *vacated*, 2009-
1067 (La. 5/29/09), 9 So.3d 854 (vacating on grounds that arguments were
inappropriately raised for the first time on appeal); *see also Talley v. La. Dep't
of Transp. & Dev.*, 2022-0983, p. 11 (La. App. 1 Cir. 2/24/23), 361 So.3d 1041,
1049 ("Records that contain privileged information, by definition, are not a
public record.").

Based on this persuasive authority, we conclude that the unredacted
copies of the Student Complaint Memo, Memo to File, and supporting
documents were not public records at the time of the alleged concealment.
*See Washington*, 361 So.3d at 1049. Furthermore, Appellants correctly point
out that the student complainant who is mentioned in the Student Complaint
Memo and Memo to File consistently expressed that she would not consent
to the disclosure of the unredacted report. This demonstrates that the
documents may also be exempted from inclusion under the Public Records
Act based on the student's right to privacy afforded to her under Article I,
Section 5 of the Louisiana Constitution. *See, e.g.*, *E. Bank Consol. Special Serv.
First Prot. Dist. v. Crossen*, 2004-838 (La. App. 5th Cir. 12/28/04), 892 So.2d
666, *writ denied*, 897 So.3d 608 (La. 2005); La. Const. art. I, § 5; La. R.S.
44:31 (providing that the right to examine records is subject to statutory and

Constitutional restrictions); La. R.S. 44:4.1 (stating same); La. R.S. 44:1(2)(a).

Although the Public Records Act's exceptions are to be construed narrowly to ensure the public right of access,[9] there is minimal evidence supporting the district court's conclusion that the Board and Appellants actually concealed the documents. In its Crime-Fraud Exception Order, the district court stated that Board member Joe Alleva ("Alleva") testified that the Board members chose to preserve the documents in the law offices of Taylor Porter to "stop [the Taylor Porter Investigation] from becoming public information." Our close review of the record demonstrates the district court's error in this determination.

Alleva testified that he believed that the Board chose to preserve the unredacted copies of the documents at Taylor Porter's offices to "protect the name of the young lady and to stop it from becoming public information." In its Crime-Fraud Exception Order, the district court shortened this response to only mention that the Board wished to "stop [the Taylor Porter investigation] from becoming public information." This discrepancy between the actual testimony and the district court's interpretation of the testimony raises doubt as to the correctness of its determination. *See Lima-Rivero*, 971 F.3d at 520. Beyond this inconsistency from the record, Lewis presented little other evidence demonstrating actual concealment of the alleged public records. Thus, we conclude that the district court clearly erred in determining that Appellants and the Board criminally concealed public records as contemplated under La. R.S. 14:132(B). *See id.*

---

[9] *Landis v. Moreau*, 2000-1157, p. 4 (La. 2/21/01), 779 So.2d 691, 694 (citing *Title Rsch. Corp. v. Rausch*, 450 So.2d 933 (1984)).

No. 23-30386

## *ii. Furtherance of a Crime or Fraud*

Looking beyond the prima facie case, the district court's ruling on the crime fraud exception constitutes clear error. "Under the crime-fraud exception to the attorney-client privilege, the privilege can be overcome where communication or work product is intended to *further* continuing or future criminal or fraudulent activity." *Edwards*, 303 F.3d at 618 (internal quotation marks and citation omitted) (emphasis added). In other words, the client must have consulted their counsel "for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme." *In re Int'l Sys.*, 693 F.2d at 1242 (citation omitted). Appellants argue that Lewis misrepresented a Board member's deposition testimony to prove that the Board "sought legal advice from" Appellants regarding whether the storage of the Miles documents in Taylor Porter's office would be a violation of La. R.S. 14:132(B). Thus, they argue that "Lewis has not made and cannot make any showing that LSU sought advice from" Appellants "for the purpose of furthering the crime of second degree injuring of a public record in violation of La. R.S. 14:132(B)."

Appellants are correct. As discussed above, the district court gave undue weight to the truncated version of Alleva's testimony that it was presented. Beyond this strained interpretation of the deposition testimony, Lewis presented no evidence that the Board sought to fraudulently conceal public records through the attorney-client relationship. Thus, we conclude that the district court clearly erred in determining that the Board sought Appellants' counsel "for advice that w[ould] assist [it] in carrying out a contemplated illegal or fraudulent scheme." *See In re Int'l Sys.*, 693 F.2d at 1242.

16

### *iii. Reasonable Relationship*

The district court's determination as to the last step of the analysis fares no better. The third step asks whether the privileged information sought was reasonably related to the alleged fraudulent activity. *In re Grand Jury Subpoena*, 419 F.3d at 436 (citation omitted). In its Disclosure Order, the district court compelled written discovery from and depositions of Appellants regarding the Taylor Porter Investigation because they were reasonably related to Lewis's hostile work environment claims. On appeal, Lewis contends that it did not err in doing so. We disagree.

In *In re Grand Jury Subpoena*, this court determined that discovery of privileged communications and work product is limited to that which is "reasonably related to the furtherance of the ongoing or future crime or fraud at issue." 419 F.3d at 347. This court has consistently rejected looser limitations. *See id.* at 346 (collecting cases); *see also In re Int'l Sys.*, 693 F.2d at 1242–43 (citation omitted) (requiring "some valid relationship between the work product under subpoena and the *prima facie* violation"). Otherwise, "the crime-fraud exception [would] swallow[] the privilege rule." *In re Grand Jury Subpoena*, 419 F.3d at 347. With respect to the reasonable relationship, Lewis did not make "the proper showing" that the documents are reasonably related "to the furtherance of the ongoing or future crime or fraud." *Id.* Nonetheless, the district court accepted a looser limitation on the scope of the reasonable relationship prong of the Crime-Fraud Exception analysis without detailed reasoning. Thus, the district court clearly erred in holding that Lewis had proven that a reasonable relationship existed between the documents and the alleged prima facie violation of La. R.S. 14:132(B).

## IV. Conclusion

In sum, the district court clearly erred in holding that Lewis established a prima facie case that the Board violated La. R.S. 14:132(B) and

No. 23-30386

that the alleged privileged communications were made in furtherance of the crime and reasonably related to the alleged violation. Thus, we REVERSE the district court's Crime-Fraud Exception Order and REMAND for proceedings consistent with this opinion.