# United States Court of Appeals for the Fifth Circuit

---

No. 24-30341

---

Sharon Lewis,

*Plaintiff—Appellant*,

*versus*

Board of Supervisors of Louisiana State University and Agricultural and Mechanical College,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-198

---

Before Davis, Higginson, and Douglas, *Circuit Judges*.
Dana M. Douglas, *Circuit Judge*:

Sharon Lewis is a graduate of Louisiana State University ("LSU") who worked in full-time positions in the school's football department between 2001 and 2022. During this time, Lewis internally reported that former LSU head football coach Leslie "Les" Miles sexually harassed student workers. She also reported that coach Frank Wilson sexually harassed and assaulted Lewis and others and pressured Lewis to assist Miles in sexualizing student workers. In this lawsuit, Lewis brought claims under Titles IX and VII against the LSU Board of Supervisors (the "Board"),

United States Court of Appeals
Fifth Circuit
**FILED**
April 8, 2025
Lyle W. Cayce
Clerk

alleging, among other things, retaliation for reporting Miles and Wilson. After a six-day trial, the jury returned a verdict in favor of the Board on all claims, and the district court entered judgment on that verdict. Lewis subsequently filed a renewed motion for judgment as a matter of law or, in the alternative, motion for new trial, which the district court denied. Lewis timely filed this appeal. For the reasons that follow, we AFFIRM the final judgment and denial of Lewis's renewed motion for judgment as a matter of law or, in the alternative, motion for new trial.

## I.

### A.    Factual Background

Sharon Lewis spent nearly twenty-one years working for the LSU football program. In 2001, then-head football coach Nick Saban hired Lewis as the coordinator for recruiting operations. Lewis was later promoted to assistant athletics director for football recruiting and alumni relations, and she remained in that position for about thirteen years. Lewis's job responsibilities included management of full-time employees and student workers who assisted with day-to-day recruiting tasks and related activities.

In 2005, LSU hired Les Miles as head football coach, a position which he held until 2016. Lewis alleges that during Miles's tenure at LSU, she witnessed numerous instances of racist and sexist misconduct by Miles and received complaints of sexual assault and harassment by Miles, LSU football players, coaches, and other staff members from several of the student workers she oversaw. Lewis further alleges that Frank Wilson, who served as an assistant coach and recruiting coordinator under Miles from 2010 to 2016, sexually assaulted and harassed Lewis and other female employees and students. Lewis lodged several complaints with her supervisors and the Athletic Department's designee for receiving and investigating Title IX-related complaints and reports, often with no action taken.

No. 24-30341

Lewis alleges that Miles began to retaliate against her for reporting the complaints of two students against him. Lewis specifically contends that Miles left her off recruiting emails and excluded her from recruiting meetings. In addition, Lewis alleges that the Athletic Department restructured her position so that Miles controlled her pay raises. And, in 2013, the Athletic Department allegedly sent Lewis several admonishment letters and wrote Lewis up for recruiting and NCAA violations that she did not commit and was not aware of.

Lewis also asserts that as a result of her filing Title IX complaints against Miles and other senior Athletic Department officials, LSU repeatedly refused to promote her. When Lewis complained to her immediate supervisor, he reportedly told Lewis she was not being promoted because she used "the word Title IX too much" and "people [were] afraid" of her. When Lewis was eventually promoted in 2020 to associate athletic director of football recruiting and alumni relations, she alleges that she received no increase in pay despite her responsibilities having increased. Lewis further contends that from 2020 to 2021, she was denied access to resources and the support of administrative staff and was subjected to disciplinary actions because of her complaints of Title IX violations in the Athletic Department.

In April 2021, Lewis filed both a complaint with the Equal Employment Opportunity Commission ("EEOC") and the instant lawsuit. During the pendency of her case in the district court, LSU hired current head coach Brian Kelly. Kelly then re-hired Frank Wilson in December 2021 as the assistant head coach and running back coach. Lewis, who took a paid leave of absence beginning in April 2021, never met or communicated with Kelly. In January 2022, Lewis was terminated from her employment. According to Lewis, her termination stemmed from her previous reports of Wilson's misconduct. The Board contends that Lewis, along with about forty others in the football program, was fired as part of Kelly's initiative to reorganize the recruiting department and hire his own staff.

No. 24-30341

## B. Procedural History

Lewis initially sued the Board along with dozens of other defendants. She brought claims pursuant to Titles IX and VII and civil RICO, alleging, *inter alia*, sex- and race-based discrimination and harassment at LSU, and that her termination, along with the 2020 promotion she received without a corresponding increase in pay, were in retaliation for her reporting of discrimination and misconduct. Eventually, after extensive motions practice, only the Board remained as defendant.[1] On October 11, 2023, the Board filed a motion for summary judgment, which the district court granted in part and denied in part. *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. Mech. Coll.*, No. 21-198-SM-RLB, 2023 WL 8370096 (M.D. La. Dec. 1, 2023). The following claims remained against the Board and proceeded to trial by jury: (1) Title IX retaliation, for Lewis being given a promotion without a pay increase in August 2020; (2) Title IX retaliation, for Lewis's 2022 termination; (3) Title VII retaliation, for Lewis being given a promotion without a pay increase in August 2020; (4) Title VII retaliation, for Lewis's 2022 termination; and (5) Title VII hostile work environment on the basis of sex. *See id.*

On the fifth day of trial, after resting her case, Lewis moved for a directed verdict under Federal Rule of Civil Procedure 50(a). The district court orally denied the motion as premature. *See* Fed. R. Civ. P. 50(a)(1). After the defense rested, Lewis re-urged her motion, which the district court again denied.

---

[1] This court has considered two other appeals in this case. The first, *Lewis v. Danos*, 83 F.4th 948 (5th Cir. 2023), stemmed from the district court's dismissal of Lewis's RICO-related allegations as time-barred and inadequately pleaded as to causation, which a panel of this court affirmed. The second, *Lewis v. Crochet*, 105 F.4th 272 (5th Cir. 2024), concerned the district court's order compelling evidentiary disclosures and depositions implicating the attorney-client privilege.

4

No. 24-30341

The jury returned a verdict in favor of the Board as to all five claims, awarding Lewis no damages. The district court entered judgment against Lewis, and Lewis thereafter filed a renewed motion for judgment as a matter of law or, in the alternative, a motion for new trial. In her motion, Lewis argued she was entitled to judgment as a matter of law because the jury lacked a legally sufficient evidentiary basis for finding in favor of the Board on her Title IX and Title VII claims. Alternatively, Lewis asserted that the court should order a new trial because the verdict was against the weight of the evidence and the jury was tainted by certain communications with a witness and by remarks made during defense counsel's opening statement and closing argument. The district court denied Lewis's motion, concluding that neither judgment as a matter of law nor a new trial was warranted. *See Lewis v. Bd. of Supervisors of La. State Univ. & Agric. Mech. Coll.*, No. 21-198-SM-RLB, 2024 WL 2029143 (M.D. La. May 7, 2024).

Lewis timely appealed. In her opening brief, Lewis addresses only the second and fourth claims that proceeded to trial: namely, her Title IX and Title VII retaliation claims relating to her 2022 termination. Lewis has forfeited all other issues on appeal. *United States v. Bowen*, 818 F.3d 179, 192 n.8 (5th Cir. 2016) ("[A]ny issue not raised in an appellant's opening brief is forfeited.").

## II.

We have appellate jurisdiction to review the district court's order denying Lewis's renewed motion for judgment as a matter of law pursuant to 28 U.S.C. § 1291. *Good River Farms, L.P. v. TXI Ops., L.P.*, 100 F.4th 545, 550 (5th Cir. 2024). And while a district court's denial of a motion for new trial is ordinarily not appealable, *Md. Cas. Co. v. Acceptance Indem. Ins. Co.*, 639 F.3d 701, 710 n.7 (5th Cir. 2011), it is reviewable, *Osterberger v. Relocation Realty Serv. Corp.*, 921 F.2d 72, 73 (5th Cir. 1991). Such appeals should be taken from the final judgment. *C & W Asset Acquisition LLC v. Knox*, 104 F. App'x 936, 938 (5th Cir. 2004); *see also Osterberger*, 921 F.2d at 73

5

("[E]very Circuit, including the Fifth, has treated an appeal from an order denying a motion for new trial as an appeal from the adverse judgment itself." (collecting cases)).  Although Lewis appeals from the district court order denying in part her alternative motion for new trial, Lewis also appeals from the district court's final judgment dismissing her Title IX and Title VII claims.  Accordingly, we will treat Lewis's appeal from the order denying her motion for a new trial as an appeal from the adverse judgment, which we have jurisdiction to review under 28 U.S.C. § 1291.

## III.

We begin with the district court's denial of Lewis's renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  Our review is de novo, *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 652–53 (5th Cir. 2019), so we "apply[] the same standard as the district court," *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008).  When, as here, a case is tried by jury, our standard of review with respect to the jury's verdict is "especially deferential."  *Apache Deepwater*, 930 F.3d at 653 (quoting *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016)).  As such, "we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party," and will reverse the denial of a motion or renewed motion for judgment as a matter of law "only if the evidence points so strongly and so overwhelmingly in favor of the []moving party that no reasonable jury could return a contrary verdict." *Foradori*, 523 F.3d at 485 & n.8; *see also id.* ("[W]hen a case is tried by a jury, a Rule 50[(b)] motion is a challenge to the legal sufficiency of the evidence." (citation omitted)); *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) ("We reverse the denial of a Rule 50 motion only if the jury's factual findings are unsupported by substantial evidence or 'the legal conclusions implied from the jury's verdict cannot in law be supported by

those findings.'" (quoting *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018))).

Accordingly, Lewis must demonstrate that "no reasonable jury would have had a legally sufficient evidentiary basis" for the verdict on her Title IX and Title VII retaliatory termination claims. *Apache Deepwater*, 930 F.3d at 653. She fails to clear this high hurdle.

## A.    TITLE IX RETALIATION CLAIM

"Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005). The Supreme Court has held that the private right of action implied by Title IX includes claims of retaliation "where the funding recipient retaliates against an individual because [s]he has complained about sex discrimination." *Id.* at 171. To prove a Title IX retaliation claim, a plaintiff must show that (1) she engaged in activity protected by Title IX, (2) she suffered an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoting *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004)); *see also Collins v. Jackson Pub. Sch. Dist.*, 609 F. App'x 792, 795 (5th Cir. 2015) (per curiam) (applying the *Willis* Title VII retaliation standard in a Title IX case because both statutes have similarly worded provisions and are afforded similar interpretation); *Taylor-Travis v. Jackson State Univ.*, 984 F.3d 1107, 1119–20, 1119 n.43 (5th Cir. 2021) (same).

The parties here agree that Lewis's Title IX retaliation claim turns on causation. Lewis bases her theory of causation on the hiring of head football coach Brian Kelly and the related re-hiring of associate head coach Frank Wilson, against whom Lewis had previously filed Title IX complaints. Lewis contends that because Kelly wished to hire Wilson as his top assistant, she was terminated to protect Wilson from a Title IX investigation and pave the way for his re-hiring.

But the Board put forth ample evidence at trial supporting a different explanation for Lewis's termination: that Lewis was terminated as part of Kelly's efforts to clean house and bring his own staff into the football program, not in retaliation for her Title IX reports against Wilson and others. For example, Kelly testified that at the time he terminated Lewis's position, he was unaware of Lewis's prior allegations against Wilson. Kelly also testified that he "learned about [Lewis's] complaints against Wilson after" he eliminated her position. He stated that upon arriving at LSU, he decided that he "was going to make quick and swift changes" to the current staff and organizational structure. These "sweeping changes across the board" allowed Kelly to "start over" and implement his own "vision" for the program. Kelly further stated that the recruiting department in which Lewis worked was a priority for restructuring because recruitment is "an important and integral part to success." He testified that when a new coach is brought in, that signals that "sweeping changes" to and "reorganization" of the recruiting program and its personnel are needed given that it was not previously producing "the kind of success necessary."

Additionally, Senior Athletic Director Miriam Segar and Lewis's immediate supervisor Verge Ausberry both testified that about forty other football staff and administrators were terminated as part of the restructuring. Segar, Ausberry, and three other witnesses also testified that widespread terminations such as this are expected following the hiring of a new head coach like Kelly. For instance, Segar testified that it is "not uncommon, when staffs change, for them to bring in their own staff," and that she did not "know any difference" between Lewis's termination and the others who were also laid off in February 2022. Ausberry likewise testified that "Kelly said he wanted a whole new recruiting staff," and it was Kelly who "ma[de] those calls." Ya'el Loften, Kelly's executive assistant, testified that "when Coach Kelly was coming in, anybody that had a powerful position was going to be gone." Athletic Director Scott Woodward similarly testifying that "when you have a new head coach, especially one of Coach Kelly's stature,

you have a big turnover," and "there's autonomy with [the] head coaches on what staff they want to bring in." Finally, Chief Operating Officer Stephanie Rempe testified that Kelly "knew that he wanted to make changes to the recruiting department, which led to terminating that entire staff and then hiring people that fit what he wanted to build." According to these witnesses, Lewis's termination was nothing more than a collateral casualty of Kelly's restructuring initiative.

Drawing all reasonable inferences and resolving credibility determinations in the light most favorable to the Board, as we must, this evidence and the numerous witness testimonies support the jury's verdict that Lewis's termination was not in retaliation for her Title IX reports. *See Foradori*, 523 F.3d at 485; *see also Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 455 (5th Cir. 2001) ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" (quoting *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1099 (5th Cir. 2001))). The evidence and arguments Lewis relies on for her theory of causation do not warrant upending this verdict.

For example, Lewis argues that evidence of the Board's official discriminatory policy of protecting coaches against Title IX complaints demonstrates that she is entitled to judgment as a matter of law. She asserts that evidence presented at trial shows that the Board directed all Title IX complaints to Segar, rather than the designated Title IX coordinator, as part of a "capture and kill scheme" that presented conflict-of-interest concerns. While this highlights the shortcomings in LSU's previous handling of Title IX complaints, Lewis does not explain how such a policy, if it existed, is causally connected to her termination.[2]

_____

[2] Because we hold, on de novo review, that this argument, as well as Lewis's argument concerning purported discrepancies in Kelly's testimony, *infra*, fail to establish

Lewis also relies on alleged inconsistencies in Kelly's testimony. She contends that although Kelly testified at trial that he "terminated [Lewis's] position," he admitted during a deposition that he "clearly understood that Sharon Lewis'[s] situation was one to leave alone," it "was to be handled by [ ] Senior Administration and the University," and it "was not within [his] purview" to fire her. Lewis further notes that it was Woodward, not Kelly, who signed her termination letter.

But Lewis fails to explain how these purported discrepancies undermine the validity of the jury's verdict. Kelly acknowledged at trial that there is a difference between terminating a person and terminating a position, maintaining that he did the latter in Lewis's case. And even though Kelly terminated only Lewis's position, this does not suggest that LSU terminated Lewis because of her protected activities. The Board presented sufficient evidence supporting its theory that Lewis and her position were terminated as part of Kelly's restructuring of LSU's football program and the recruiting department, not in retaliation for her Title IX complaints. For instance, the jury heard testimony that neither Kelly nor Woodward were aware of Lewis's prior allegations against Wilson at the time of her termination. The jury also heard Kelly's testimony about the "sweeping changes" he intended to make to the program, including its recruiting department. And jury heard Lewis's attorney question Kelly about the alleged discrepancies between his trial and deposition testimonies.

Armed with this evidence, the jury rendered a verdict in favor of the Board. Again, we must "draw all reasonable inferences and resolve all credibility determinations in the light most favorable to" the Board, giving

---

causation, we need not reach Lewis's argument that the district court erred in declining to consider these "non-frivolous" arguments.

deference to the jury's verdict. *Foradori*, 523 F.3d at 485. It is not the role of this court to substitute its own inferences or assessments of conflicting evidence and witness credibility for those of the jury. *See OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675-76 (5th Cir. 2016); *see also Montano v. Orange County*, 842 F.3d 865, 874 (5th Cir. 2016) ("The evidence presented at trial, including inconsistent testimony by witnesses for the county between that offered in a deposition and at trial, presents a classic example for why it is for the jury alone to judge the credibility of witnesses and weigh the evidence."). Thus, Lewis's argument concerning the distinction between eliminating a position on an organization chart and ordering that Lewis herself be terminated does not cut against the evidence underlying the jury's verdict.[3]

Next, Lewis points to evidence adduced at trial that she contends shows LSU officials willfully ignored the Board's mandatory Title IX reporting policies. Lewis argues that despite this policy, her allegations of Wilson's misconduct were never forwarded to the Title IX office—neither at the time she lodged her reports nor when Wilson was re-hired in 2021. In particular, Lewis names three individuals, including Stephanie Rempe, whom she claims were aware of her allegations against Wilson but failed to report this information in contravention of the mandatory reporting policy. But to the extent these persons knew of Lewis's alleged protected activity, Lewis does not offer any evidence linking them to her termination decision.

---

[3] And, despite Lewis's argument to the contrary, the basis for her termination is not so "speculative" as to warrant judgment as a matter of law in her favor. While Kelly did not terminate Lewis individually, Lewis's termination was the natural result of the elimination of her position. The non-retaliatory basis for the termination of her position, *ipso facto*, gives rise to a reasonable inference that the Board did not act in retaliation when it terminated Lewis herself. *See Logan*, 263 F.3d at 455 ("A party is entitled to judgment as a matter of law 'only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position.'" (quoting *Hampton*, 247 F.3d at 1099)).

As previously discussed, the uncontroverted evidence presented at trial showed it was Kelly who terminated Lewis's position, and Woodward who signed Lewis's termination letter. Trial testimony established that neither Kelly nor Woodward were made aware of Lewis's allegations against Wilson before he was re-hired and Lewis was terminated. That others not directly involved in the decision to terminate Lewis or her position knew of her Title IX reports against Wilson and failed to report them has no bearing on her retaliatory termination claim and is thus insufficient to disturb the jury's verdict.[4]

Lastly, Lewis relies on evidence purportedly showing that the Board directed LSU President William Tate to re-hire Wilson in violation of accreditation rules. She points to the testimony of board member Colis Temple, who stated that he invited Tate to meet with him and Wilson because he "was interested in trying to help LSU get the best they could get." Again, Lewis fails to establish the relevance of this evidence to her Title IX retaliation claim, and particularly how it demonstrates a causal connection between her protected activity and her termination such that she is entitled to judgment as a matter of law.

In sum, the facts and inferences do not point "so strongly and overwhelmingly in [Lewis's] favor that reasonable jurors could not reach a contrary conclusion." *Foradori*, 523 F.3d at 485. We therefore affirm the

---

[4] Woodward testified that either his chief of staff or Rempe—Woodward's Chief Operating Officer—delivered a stack of termination letters, including Lewis's, to Woodward for his signature. The testimony does not suggest that Rempe had any further involvement in or decision-making power over Lewis's termination beyond merely effectuating Kelly's staffing decisions. And despite Lewis's argument to the contrary, nothing in the record indicates that Rempe ever informed Woodward of Lewis's allegations against Wilson, as documented in a background report prepared in anticipation of Wilson's re-hiring. Although Woodward testified that the report was generally discussed with him at some point, he also testified that he had not read or looked at the report, did not know about Lewis's allegations against Wilson as contained in the report, and did not know about Lewis's allegations against Wilson when he recommended that Kelly re-hire Wilson.

district court's denial of Lewis's renewed motion for judgment as a matter of law on her Title IX retaliation claim.

### B.    TITLE VII RETALIATION CLAIM

Title VII makes it unlawful to discriminate or take an adverse employment action against an employee who has opposed an employment practice made unlawful by Title VII.  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected under the statute, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse action.  *Feist v. La. Dep't of Just.*, 730 F.3d 450, 454 (5th Cir. 2013) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)); *accord Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (5th Cir. 2002).  "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."  *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Green v. Admins. of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002), *as amended on denial of reh'g and reh'g en banc* (Apr. 26, 2002)).  The filing of an EEOC charge constitutes protected activity.  *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005) (citing *Walker v. Thompson*, 214 F.3d 615, 629 (5th Cir. 2000)).

As with Lewis's Title IX retaliation claim, the parties focus the Title VII discussion on whether Lewis established causation: that is, whether she was terminated because she engaged in Title VII protected activity when she filed an EEOC complaint in April 2021.  In denying Lewis's motion, the district court rejected Lewis's Title VII claim for many of the same reasons

it rejected her Title IX claim, finding that the evidence supports the jury's determination that Lewis's termination was not an act of retaliation.

On appeal, Lewis contends that the evidence adduced at trial, including evidence that Woodward admitted he was aware Lewis had filed an EEOC complaint against LSU and that Lewis was the only employee terminated who had filed such a complaint, suggests that she is entitled to judgment as a matter of law on her Title VII retaliation claim. Moreover, Lewis notes that she named both Woodward and Ausberry in her EEOC complaint, and that Woodward admitted to refusing to meet with Lewis to discuss her complaints of retaliation. According to Lewis, a reasonable jury viewing this evidence, when combined with Kelly's admission that he did not terminate Lewis, could only have found that Lewis was terminated for filing an EEOC complaint against Woodward and Ausberry. We disagree.

The Board introduced evidence supporting its reason for terminating Lewis: namely, as part of Kelly's "sweeping" changes to the football program and its staff. While Woodward did admit to knowing about Lewis's EEOC complaint, it was Kelly, not Woodward, who terminated Lewis's position. And to the extent Woodward was involved in Lewis's termination, as evidenced by his signature on Lewis's termination letter, Woodward testified that Lewis's EEOC complaint did not influence "any decision" he made concerning Lewis. The jury was free to discredit any inferential connection between Woodward's knowledge and Lewis's termination, and this court will not overturn the jury's reasonable conclusion. *See OneBeacon Ins. Co*, 841 F.3d at 675–76; *see also Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 297 (5th Cir. 2005) ("[W]e are not free to re-weigh the evidence or to re-evaluate credibility of witnesses[,] [and] [w]e must not substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable." (quoting *Hiltgen v. Sumrall*, 47 F.3d 695, 700 (5th Cir. 1995))).

No. 24-30341

That Lewis was the only person who filed an EEOC complaint among the forty others who were terminated also does not indicate that there was no legally sufficient evidentiary basis upon which the jury could have found in favor of the Board. If anything, this cuts against Lewis's retaliation claim; that the other terminated employees did not file EEOC charges seemingly suggests that whether an employee filed an EEOC charge was unrelated to LSU's termination decisions.

As to Lewis's contention that Woodward refused to meet with her to discuss her retaliation complaints, this argument is not supported by the record. At trial, Lewis's attorney asked Woodward whether Lewis requested a meeting with him to discuss Title IX issues, to which he responded, "[n]ot that I know of." He further testified that he referred Lewis to Stephanie Rempe and did not want to speak with Lewis directly because she was "four or five levels down," and it was the program's protocol for Rempe to handle internal operations such as this. This supports the jury's verdict.

Lewis has therefore failed to put forth the strong and overwhelming evidence needed to reverse the district court's denial of her renewed motion for judgment as a matter of law on her Title VII retaliation claim. *See Foradori*, 523 F.3d at 485.

**IV.**

We review the denial of a motion for a new trial under the more deferential abuse-of-discretion standard. *Apache Deepwater*, 930 F.3d at 653; *Foradori*, 523 F.3d at 497. "[T]he district court abuses its discretion by denying a new trial only when there is an absolute absence of evidence to support the jury's verdict." *Apache Deepwater*, 930 F.3d at 653 (quoting *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 472 (5th Cir. 2015) (internal quotation marks omitted)) (cleaned up).

No. 24-30341

Because we hold that the jury's verdict on both Lewis's Title IX and Title VII claims is supported by the evidence in reviewing the district court's denial of judgment as a matter of law, we likewise hold under the more deferential standard that there was no abuse of discretion in denying Lewis's alternative motion for a new trial. *See id.* ("Because we have already concluded that the jury's verdict was supported by the evidence in reviewing the district court's denial of judgment as a matter of law, we necessarily find that there was no abuse of discretion in its denying the motion for a new trial on liability."); *Robinson v. Ryan*, 468 F. App'x 398, 400–01 (5th Cir. 2012) (holding same).

## V.

Accordingly, we AFFIRM the final judgment and the district court's denial of Lewis's renewed motion for judgment as a matter of law or, alternatively, motion for new trial.