# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 16, 2026

Lyle W. Cayce
Clerk

No. 25-20199

Judy Vuong,

*Plaintiff—Appellant*,

*versus*

United States Department of Veterans Affairs;
Douglas A. Collins, *Secretary, U.S. Department of Veterans Affairs, In his official capacity as Secretary of Department of Veterans Affairs*,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CV-1823

---

Before Davis, Jones, and Stewart, *Circuit Judges*.

Per Curiam:[*]

Judy Vuong filed this suit pursuant to Title VII of the Civil Rights Act against her former employer, the Department of Veterans Affairs ("VA"), alleging claims of discrimination, retaliation, and hostile work environment. *See* 42 U.S.C. § 2000e-2(a). The VA moved for summary judgment on Vuong's claims and the district court granted the motion. Vuong filed this

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-20199

appeal. For the following reasons, we AFFIRM in part and REVERSE and REMAND in part.

## I. FACTUAL & PROCEDURAL BACKGROUND

Vuong, a Vietnamese female and United States citizen, was employed with the Michael E. DeBakey VA Medical Center ("VAMC") in Houston, Texas from October 2013 until February 2022.[1] During her employment with the VAMC, Vuong first worked as a Supervisory Health Systems Specialist, also referred to as "Chief of Telecare" (GS-13),[2] until that position, among numerous others, was eliminated in August 2018 due to the reorganization of the VAMC's Health Administrative Service ("HAS"). After the reorganization, Vuong began working as a Program Analyst (also GS-13) for HAS. Vuong was then "detailed" in 2018 to the Office of Nursing Services at the Veterans Affairs Central Office ("VACO") in Washington, D.C.[3] She was subsequently detailed to Human Capital Management at VACO from April 2019 until February 2022. In February 2022, she requested and received a transfer to VACO as a full-time employee, where she works remotely while living in California.

Vuong alleges that from April 1, 2014 through July 26, 2017, various VA upper-management officials, including Christopher R. Sandles, Curtis Bergeron, and Carolyn F. Baldwin, badgered, harassed and humiliated her "on almost a daily basis." She claims that their conduct was motivated by or because of her race, color, sex and was also in retaliation for her prior

_____

[1] Vuong has been employed by the VA since September 2008.

[2] "GS" refers to the General System classification and pay system applicable to civilian federal employees.

[3] "Details" are used to fill vacant positions within the VA on a temporary basis (usually between one and four months) and can be renewed or extended depending on the specific detail and other relevant circumstances.

No. 25-20199

protected Equal Employment Opportunity ("EEO") activity. She further alleges that these upper-management officials set her up for failure, excessively monitored her, talked down to her, mocked her education, assigned her "demeaning work duties," tried to turn her coworkers against her, attempted to create strife between her and her subordinate employees, intentionally gave her inconsistent instructions, sent her harassing emails, humiliated her, ignored her work-related inquiries, defamed her, repeatedly questioned her intelligence, and excluded and isolated her from coworkers.

Vuong additionally contends that she was "subjected to several discrete adverse [employment] actions" by upper-management officials such as the elimination of her Chief of Telecare position, being isolated, being denied training and "detail" opportunities, receiving low ratings on her performance appraisals, not receiving promotions, not being permitted to participate in the National Workgroup, and receiving a "2016 Supervisory Notice of ECF Performance Concerns." She further argues that she was not selected her for various positions for which she applied such as the Staff Assistant position to the Deputy Medical Center Director, the acting Chief of HAS position, the position of Medical Administration Officer under Vacancy ID 1789406, the Health Systems Specialist position under the Office of the Deputy Medical Center Director, and the Health Systems Specialist position under the Clinical Practice Office. According to Vuong, these discrete adverse acts were motivated by or because of her race, color, and sex, and were also in retaliation for her opposition to such unlawful conduct.

On October 12, 2016, Vuong filed a formal EEO complaint of discrimination with the VA's Office of Resolution Management.[4] She filed additional complaints of discrimination on October 7, 2018 and February 7,

_____

[4] VA Case No. 2003-0580-2016105116 and EEO Hearing No. 460-2018-00113X.

No. 25-20199

2020.[5] Then on June 3, 2022, she filed this suit against the VA and the VA's Secretary in his official capacity, alleging claims of discrimination based on sex, race, color, and retaliation pursuant to Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-2(a).[6] A little over a year later, on June 28, 2023, she filed a 150-page Second Amended Complaint.

On April 26, 2024, the VA moved for summary judgment on Vuong's claims. In its motion, the VA argued that Vuong's employment discrimination case was based entirely on "a series of slights and inconveniences that Title VII does not cover." The VA continued that though she alleges that every supervisor she had from 2014 to 2019—along with VA employees of various races and genders—micromanaged, embarrassed, and harassed her, she nevertheless failed to present competent summary judgment evidence to support her argument that the alleged conduct was due to her race, color, sex or her protected EEO activity. The VA further contended that, although she challenged numerous non-selections for various positions by asserting that she was the most qualified candidate, the evidence showed that "she ha[d] no knowledge of the selected individuals' qualifications and didn't even apply to some of the positions." The VA argued that Vuong was merely "unhappy with her workplace and . . . complained about many aspects of it, but none of her claims [were] supported by competent summary judgment evidence suggesting that the alleged conduct [was] actionable under Title VII[.]"

---

[5] *See* Case Nos. 2003-0580-2018106006, 2003-0580-2020101147. It appears from the record that the VA did not act on any of these complaints.

[6] The district court dismissed the VA as a defendant in Vuong's suit because a Title VII action can only be brought against the head of the agency, not the agency itself. Nonetheless, the defendant herein is still referred to as the "VA" for ease of reference.

No. 25-20199

The district court agreed with the VA and granted its summary judgment motion. As a preliminary matter, the district court sua sponte dismissed Vuong's hostile work environment claim because although she had alleged facts related to a hostile workplace, she failed to adequately plead a cause of action by making a "short and plain statement" of her claim in a specific numbered paragraph. *See* FED. R. CIV. P. 8(a)(2), 10(b). As for Vuong's Title VII discrimination claims, the district court reasoned that Vuong failed to establish a prima facie case of race, color, or sex discrimination because she failed to show that she was replaced by someone outside her protected group or treated less favorably than other similarly situated employees outside of her protected group. With respect to Vuong's Title VII retaliation claim, the district court determined that the allegations she advanced regarding her negative treatment failed to rise to the level of actionable retaliatory conduct because they did not exceed the threshold of being mere "petty slights." Additionally, because Vuong actually benefitted in terms of an increased salary from the HAS reorganization, the elimination of her Chief of Telecare position also failed to qualify as actionable retaliatory conduct. The district court then explained that Vuong failed to establish causation with respect to her non-selection for various upper-level positions within the VAMC because there was no evidence other than her subjective beliefs and unsupported speculation that she was not selected due to her prior EEO activity. Vuong filed this appeal.

## II. STANDARD OF REVIEW

We conduct a de novo review of a district court's grant of summary judgment. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could

5

return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A plaintiff's subjective beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment. *See Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011); *Clark v. Am.'s Favorite Chicken Co.*, 110 F.3d 295, 297 (5th Cir. 1997); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "A panel may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (internal quotation marks and citation omitted).

## III. Discussion

On appeal, Vuong alleges that from April 1, 2014 through August 25, 2021, members of VAMC's Management and Human Resources ("HR") badgered, harassed, and humiliated her on a daily basis due to her to race, color, sex and in retaliation for her protected EEO activity. She contends that during this time period she was subjected to several discrete adverse actions including the elimination of her position as Chief of Telecare after the reorganization of HAS, the subsequent declension of her job title, and VAMC's failure to assign her to a similar and permanent position within 360 days. She further complains that she received low ratings on various performance assessments and did not receive numerous promotions, positions, or details for which she applied. She avers that she has provided direct and circumstantial evidence of a discriminatory and retaliatory hostile work environment through her own testimony and that of four fact witnesses: Denise Davis (Nurse Manager of Telecare for VAMC), Cynthia Mabry-Ezimako (Assistant Nurse Manager of Telecare for VAMC), Anthony

No. 25-20199

Radcliffe Myers (Nurse Practitioner of Telecare for VAMC) and Stephanie McAfee (Paralegal Specialist). She submits that the affidavit testimony of these witnesses creates a genuine issue of material fact as to whether she was subjected to a hostile work environment or retaliated against due to her protected EEO activity.

Vuong also contends that the district court erred by dismissing her hostile work environment claim sua sponte on grounds that she failed to meet the pleading requirements under the Federal Rules of Civil Procedure. Vuong counters that her amended complaint satisfies the Rule 8(a)(2)'s minimum requirement for a "short and plain statement" because it provides adequate notice to the VA of the factual and legal basis for her claim for hostile work environment, setting forth the elements of her claim with specificity, in numbered paragraphs, in accordance with Rule 10(b). *See* FED. R. CIV. P. 8(a)(2), 10(b).

We address each of her arguments in turn.

*a. Title VII Employment Discrimination*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Title VII is the exclusive judicial remedy for claims of discrimination in federal employment." *Rowe v. Sullivan*, 967 F.2d 186, 189 (5th Cir. 1992). A plaintiff seeking relief under Title VII must exhaust his administrative remedies prior to filing suit in federal court. *See Stroy v. Gibson ex rel. Dep't of Veterans Affs.*, 896 F.3d 693, 698 (5th Cir. 2018).

"In employment discrimination cases, a plaintiff may rely on direct or circumstantial evidence, or both." *Price v. Valvoline*, 88 F.4th 1062, 1065 (5th Cir. 2023) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th

Cir. 2010)). "Direct evidence of discrimination . . . prove[s] the existence of a fact . . . without any inferences or presumptions." *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 958 (5th Cir. 1993)). "[I]n order for comments in the workplace to provide sufficient evidence of discrimination, they must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the [complained-of adverse employment decision]; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.'" *Rubinstein v. Admins. of the Tulane Ed. Fund*, 218 F.3d 392, 400–01 (5th Cir. 2000) (alterations in original). "A statement . . . which shows on its face that an improper criterion served as a basis . . . for the adverse employment action is direct evidence of discrimination." *Price*, 88 F.4th at 1065 (internal quotation marks and citations omitted). However, if a statement does not meet this standard "without inference or presumption," it is considered "only [a] stray remark[]." *Id.* (quoting *Etienne v. Spanish Lake Truck & Casino Plaza, LLC*, 778 F.3d 473, 476 (5th Cir. 2015)); *see also Rubinstein*, 218 F.3d at 401.

"If the plaintiff cannot prove [her] case with direct evidence of discriminatory motive, [s]he can still rely on indirect evidence." *McMichael*, 934 F.3d at 456. Circumstantial evidence cases are analyzed under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). Under that framework, the plaintiff must first establish a prima facie case of discrimination, which requires a showing that she (1) is a member of a protected class, (2) was qualified for the position at issue, (3) was the subject of an adverse employment action, and (4) was replaced by someone outside the protected class or was treated less favorably than others similarly situated in nearly identical circumstances. *See Lee v.*

*Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Hou. Health Sci. Ctr.*, 245 F.3d 507, 513 (5th Cir. 2001).

If the plaintiff successfully establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). "The employer's burden is only one of production, not persuasion, and involves no credibility assessment." *Id.* If the employer meets its burden of production, the ultimate burden shifts back to the plaintiff who must then prove that the employer's proffered reason is merely a pretext for a real discriminatory purpose. *Id.* To meet her burden, "the plaintiff must rebut each nondiscriminatory . . . reason articulated by the employer." *Id.*

Because this is a circumstantial evidence case, we analyze it under the burden-shifting framework set forth in *McDonnell Douglas*. 411 U.S. at 802–03.[7] Thus, if Vuong can successfully establish a prima facie case of discrimination, the burden then shifts to the VAMC to articulate a legitimate, nondiscriminatory reason for its employment action. *McCoy*, 492 F.3d at 557. If the VAMC meets its burden, the burden then shifts back to Vuong who must prove that the VAMC's proffered reason is pretextual. *Id.*

_____

[7] Vuong contends that she has provided "direct evidence" of discrimination through her own testimony and that of her four fact witnesses who provided affidavit testimony regarding alleged discriminatory comments that were purportedly made about her by upper-management officials. However, she misunderstands what constitutes direct evidence under this court's precedent. "A statement . . . which shows on its face that an improper criterion served as a basis . . . for the adverse employment action is direct evidence of discrimination." *Price v. Valvoline*, 88 F.4th 1062, 1065 (5th Cir. 2023) (citing *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010)). Here, because the affidavits that Vuong provides contain nothing more than speculation and conclusory allegations, they do not qualify as direct evidence in support of her claims. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").

It is undisputed that Vuong is a member of a protected group and that her position as Chief of Telecare was eliminated due to the HAS reorganization. The VA contends, however, that Vuong cannot show that she suffered an adverse employment action due to the HAS reorganization or point to a similarly situated employee, outside of her protected class, who was treated more favorably than her during the reorganization. *See Lee*, 574 F.3d at 259.

Vuong claims on appeal, as she did in response to the VA's summary judgment motion, that when her position as Chief of Telecare was eliminated, the position was then reinstated four years later and assigned to Denise Ryals, a black female. According to Vuong her position "was so called eliminated and then re-instated for [] Ryals . . . in order to remove . . . Vuong and provide a cover up." But the record does not support this assertion. To the contrary, as the VA argues on appeal, after HAS was reorganized, Vuong's position was eliminated because her credentials did not match the position description. If she had kept the position, it would have resulted in a pay decrease. According to an affidavit from Womack, the Chief of HAS, she had been advised by HR to "abolish" Vuong's Chief of Telecare position so that Vuong could be moved to a different position but still retain her current status as a GS-13 employee, which would allow her to keep her same pay. And as the record reflects, Vuong was indeed moved to a different position, Program Analyst, where she was able to keep her GS-13 status and consequently, did not experience a pay decrease due to the reorganization. In fact, after her position as Chief of Telecare was eliminated, Vuong actually received at least four pay increases as well as a temporary promotion, also

resulting in higher pay.[8] Thus, although Vuong lost her Chief of Telecare position due to the reorganization, the VA ensured that she suffered no financial consequences from the loss and continued to provide her with alternative job positions that would allow her to retain her GS-13 status (or higher) as well as multiple pay increases. This evidence negates Vuong's argument that she was subjected to an adverse employment action when the VAMC eliminated her position as Chief of Telecare. *See id.*

Moreover, even if Vuong could meet her burden to show a prima facie case under *McDonnell Douglas*, she fails to show that the VA's purported reason for replacing her with Ryals—its reorganization and alteration of the position to require clinical credentials—is mere pretext. Vuong fails to point to a connection between the VA's decision to assign Ryals to the Chief of Telecare position and Vuong's membership in a protected class. In other words, Vuong does not present evidence to support her claim that she lost the position because she is Asian and Ryals was later assigned to the position because she is not. To the contrary, as Vuong admitted in her response to the VA's summary judgment motion, because she does not have clinical credentials, she is considered "non-clinical leadership" in any supervisory position that she holds. Consequently, after the HAS reorganization, Vuong was not qualified for the Chief of Telecare position because its description required an employee with credentials to supervise clinical staff. Ryals, on

---

[8] In January 2018 when she was in the Chief of Telecare position, Vuong's salary was $109,596.00. In October 2018, after her position was eliminated and she began working as a Program Analyst, her salary increased to $112,917.00, and her grade remained GS-13. In January 2019, Vuong received another pay increase to $115,192.00. She then received a temporary promotion in April 2019 from Supervisory Health Specialist to Management Analyst, which resulted in a pay increase to $124,113.00 and grade increase to GS-14. After her temporary promotion expired in August 2019, she returned to a GS-13 Supervisory Health Systems Specialist position with her previous salary of $115,192.00. Then in January 2020, Vuong received another pay increase to $118,885.00.

the other hand, was qualified to supervise clinical staff and therefore could serve in the Chief of Telecare position after the reorganization. Thus, Vuong has failed to carry her burden of showing that the VA's asserted reason for replacing her with Ryals four years after Vuong's termination was mere pretext.

As for Vuong's complaints that she received low ratings on various performance assessments and was not selected for numerous promotions, positions, or details for which she applied, her arguments are belied by the record. Although Vuong claims she received low performance ratings, she has not shown that the low ratings had anything to do with her protected status. She merely speculates that she received low ratings because of her membership in her protected class, failing to account for the possibility that her low performance ratings may have been caused by her deficient performance. But speculation and unsupported allegations are not sufficient to survive summary judgment. *See Carnaby*, 636 F.3d at 187 (explaining that a plaintiff's subjective beliefs, conclusory allegations, speculation, or unsubstantiated assertions are insufficient to survive summary judgment).

With respect to her non-selection for various positions or promotions, as the VA points out, Vuong fails to provide evidence that she held superior qualifications to the candidates who received the promotions or positions. As Vuong repeatedly stated in her deposition testimony, she had no idea what qualifications the other candidates held who received the promotions or positions that she wanted. Further, she does not dispute the VA's contention that she failed to apply for some of the positions for which she claims she was not selected and that she failed to exhaust at least one non-selection claim. Thus, she cannot show that she was the most qualified for those positions. And contrary to her assertion that she was not selected for various details that she desired, she was assigned in 2018 to a detail in the Office of Nursing Services at VACO in Washington, D.C. and she was assigned to a detail in

No. 25-20199

Human Capital Management at VACO from April 2019 until February 2022. Then, at her own request, she was transferred to VACO as a full-time employee. She has thus failed to provide competent summary judgment evidence to support her non-selection claims. *See Lee*, 574 F.3d at 259.

Finally, because the record does not support Vuong's claims that she was subjected to an adverse employment decision, the purportedly racist and derogatory comments that she alleges she experienced are insufficient evidence of discrimination under Title VII. This is because "in order for comments in the workplace to provide sufficient evidence of discrimination, they must be . . . related to the employment decision at issue." *See Rubinstein*, 218 F.3d at 400–01; *see also Price*, 88 F.4th at 1065 ("A statement . . . which shows on its face that an improper criterion served as a basis . . . for the adverse employment action is direct evidence of discrimination."). Thus, because Vuong has failed to show that the racist and derogatory comments that she claims she experienced were related to an adverse employment decision, the comments were at most only stray remarks. *Id.* (reasoning that if a statement that does not show "without inference or presumption" that an improper criterion served as a basis for the adverse employment action, it is considered "only [a] stray remark[]").

For the aforementioned reasons, Vuong has failed to carry her burden of establishing a prima facie case of race, color, or sex discrimination under Title VII. *See Lee*, 574 F.3d at 259. Accordingly, we uphold the district court's judgment dismissing her Title VII discrimination claims.

### b. Retaliation

It is unlawful under Title VII "to discriminate or take an adverse employment action against an employee who has opposed an employment practice made unlawful by Title VII." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) (citing 42

13

U.S.C. § 2000e-3(a)). A plaintiff can establish a prima facie case of retaliation under Title VII by showing that: "(1) she engaged in activity protected under the statute, (2) her employer took an adverse employment action against her, and (3) a causal connection exists between the protected activity and the adverse action." *Id.* (citations omitted). "Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Id.* Protected activity includes the filing of an EEO charge. *Id.* (citations omitted). When a plaintiff relies on circumstantial evidence of retaliation, courts apply the *McDonnell Douglas* burden-shifting framework. 411 U.S. at 802–03.

Vuong's arguments related to retaliation once again falter at causation. As the district court observed, Vuong merely states that the loss of her Chief of Telecare position, her negative treatment by her supervisors and colleagues, and her non-selection for various positions, was in retaliation for her protected EEO activity. But she does not provide evidence that any of these events were connected to her EEO activity. She only speculates that they were by stating that "[t]he VA . . . eliminated Vuong's Chief of Telecare position on or about August 13, 2018, when Pam Womack notified Vuong, via email, that her position was 'abolished' which means that it was eliminated only 4 months after Ms. Womack received notice of Vuong's protected EEO activity."

Again, her speculation is not enough to survive summary judgment. *See Carnaby*, 636 F.3d at 187. Even if this court were to determine that Vuong satisfies the causation element through temporal proximity,[9] the VA has

---

[9] *See Feist v. La, Dep't of Just., Off. of the Att'y. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (noting that this court has found that "a time lapse of up to four months" may be "sufficiently close" to establish temporal proximity).

offered numerous non-retaliatory reasons for the elimination of her Chief of Telecare position and her non-selection for various other positions. Thus, under the *McDonnell Douglas* burden-shifting framework, Vuong must rebut those non-retaliatory reasons to prevail on her retaliation claim. 411 U.S. at 802–03. Yet all she provides in support of her position is her own speculation, and the declarations of Davis, Mabry-Ezimako, Myers and McAfee, which only reveal more conclusory allegations and continued speculation. Similar to Vuong's speculation and conclusory allegations, conclusory affidavits from other declarants are likewise insufficient to defeat a motion for summary judgment. *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002); *see also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, we uphold the district court's judgment dismissing her retaliation claims. *See Lewis*, 134 F.4th at 295.

### c. Hostile Work Environment

We next address the district court's treatment of Vuong's hostile work environment claim. The parties substantively briefed this claim on summary judgment, with the VA arguing that Vuong failed to present evidence that her membership in a protected group caused her harassment and Vuong pointing to portions of her own lengthy affidavit and coworkers' affidavits in opposition. But the district court refused to "analyze any potential hostile work environment claim," instead dismissing the claim sua sponte for a pleading deficiency. This was error for two reasons.

First, there was no Rule 12(b)(6) motion before the district court, nor did the court warn the parties of its intent to dismiss on the pleadings. District courts may dismiss on their own initiative for failure to state a claim, but only if the procedure used is "fair" to the parties. *Century Sur. Co. v. Blevins*, 799

F.3d 366, 372 (5th Cir. 2015). "In the Fifth Circuit, fairness requires that a litigant have the opportunity to be heard before a claim is dismissed, except where the claim is patently frivolous." *Id.* Although we pass no judgment on the merits of Vuong's hostile work environment claim, we do not find it to be "patently frivolous" such that dismissal without notice was appropriate.

Second, in addition to this procedural issue, the district court's substantive basis for the dismissal was erroneous. It held that although Vuong "allege[d] facts relevant to hostile workplace" in her Complaint, she failed to designate a separately numbered paragraph to a particular hostile work environment count, such that dismissal was warranted for failure to comply with Federal Rules of Civil Procedure 8(a) and 10(b). But our case law is clear that "a party need not include the proper label for a claim in their complaint so long as they plead each element of the claim that they are trying to bring." *Barron v. United States*, 111 F.4th 667, 673 (5th Cir. 2024). Here, the district court did not identify any elements that Vuong failed to plead. Essentially, it dismissed the claim for lack of a heading, despite the fact that Vuong's Complaint uses the term "hostile work environment" repeatedly and both parties understood her to be bringing such a claim and briefed the claim on summary judgment.

Because the district court erroneously dismissed the hostile work environment claim, we must reverse this ruling and remand for further consideration.

## IV. Conclusion

For the foregoing reasons, the district court's grant of summary judgment in favor of the VA on Vuong's discrimination and retaliation claims is AFFIRMED.

The district court's dismissal of Vuong's hostile work environment claim is REVERSED. We REMAND to the district court for a ruling on

No. 25-20199

theVA's request for summary judgment on that claim, considering the briefs and evidence already submitted by the parties. We express no opinion on whether or not summary judgment should ultimately be granted.

AFFIRMED in part, REVERSED in part, and REMANDED.